## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| FRANK SAVEL (NAMED PLAINTIFF 1) and NAMED PLAINTIFFS 2-46,  on their own behalf and on behalf of all others similarly situated | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| THE METROHEALTH SYSTEM 2500 Metrohealth Dr. Cleveland, OH  44109 | ) ) ) ) |
| *Defendant*. | ) ) ) |

CASE NO. _____

JUDGE _____

**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**(WITH DEMAND FOR JURY TRIAL)**

*"**All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience . . . nor shall any interference with the rights of conscience be permitted.**"*  **Ohio Constitution, Article I, Section 7**

The above referenced Plaintiffs, (collectively the "Class," or "Plaintiffs," individually as "Named Plaintiff(s)," or grouped as the "Non-Employed Group" or the "Employed Group"), for their Complaint against Defendant The MetroHealth System, state as follows:

### INTRODUCTION

1. This is a civil action for injunctive relief and damages arising under the First Amendment of the United States Constitution; Article I, Sections 1 and 7 of the Ohio Constitution; Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq*.); and Ohio R.C. § 4112, *et seq*.

2. The Plaintiffs, in their individual and representative capacities, are, or were, at relevant times, employees of Defendant The MetroHealth System.

3. Defendant The MetroHealth System ("MetroHealth") is a county hospital located in Cuyahoga County, Ohio, and organized under Chapter 339 of the Ohio Revised Code.

4. MetroHealth employees are considered public employees in the state of Ohio, and eligible to participate in the Ohio Public Employees Retirement System ("OPERS").

5. This action involves the constitutionality and legality of the categorical denial of every class Member's request for religious exemption from COVID-19 and/or flu vaccine mandates.

## JURISDICTION & VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that the claims herein asserted involve substantial questions of federal law; as well as pursuant to 28 U.S.C. § 1332, in that the opposing parties to this action are of diverse citizenship, and the amount in controversy is in excess of $75,000.00.

7. Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1367 over any supplemental state law claims related to the facts alleged herein.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and/or (3), because a substantial part of the events or omissions giving rise to the claims occurred in this district; and/or, because at least one of the Defendants is subject to this Court's exercise of personal jurisdiction with respect to the claims asserted herein.

## FACTS RELEVANT TO ALL CLAIMS

9. On December 11, 2020, the U.S. Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA"), for the Pfizer-BioNTech COVID-19 Vaccine to be used in individuals 16 years of age and older.

10. Other COVID-19 vaccines were subsequently granted EUA status by the FDA.

11. As an incentive for employees to get vaccinated, MetroHealth began a "voluntary registration system" in May 2021, that allowed employees who received a COVID-19 vaccination to receive a green "NM" (no mask) sticker on their employee badge.  Employees with a sticker were not required to wear a mask in spaces outside patient care areas.

12. On May 24, 2021, MetroHealth CEO Akram Boutros sent a system-wide communication stating, "When gathering outside of Patient Care Areas, including in-person meetings, classrooms, and the cafeteria, masking is optional for employees with an NM sticker. Employees without an NM sticker must always be masked unless eating or drinking and must maintain social distance from all other employees."

13. As a further incentive, MetroHealth offered vaccinated employees two complimentary tickets to "The Choir of Man" musical at Playhouse Square, where the cast passed out cups of free beer to people in their seats before each performance.

14. MetroHealth thanked vaccinated employees for working hard for 18 months during the height of the COVID-19 pandemic while the unvaccinated were left out of such commendations.

15. On August 26, 2021, MetroHealth issued a system-wide announcement that "The MetroHealth System will require its workforce to be fully vaccinated against COVID-19 by Oct. 30, 2021."

16. That announcement also stated that "[t]he policy applies to MetroHealth's entire workforce, including contractors and students."

17. That announcement also stated, "As is true for required flu vaccinations, exemptions will be considered for those who have underlying health conditions or religious beliefs that preclude them from receiving the vaccination by the October 30th deadline. More details will be released later this week about how to seek an exemption. [. . .] Employees must provide their proof of having received both doses (or one dose if the Johnson & Johnson vaccine), or having an approved exemption, by Oct. 30, 2021."

18. A second communication from MetroHealth that same day stated, "As is the case with MetroHealth's flu vaccination requirement, exemptions will be considered for those who have underlying health conditions or religious beliefs that preclude them from receiving the vaccination by the October 30 deadline. If you intend to seek an exemption, please email

HRvaccinationprogram@metrohealth.org to request the required documentation forms. Complete documentation for exemption requests should be provided as soon as possible. The deadline for submission of a request for exemption, with all required documentation, is Friday, October 1st at 5 p.m."

19. That second communication also stated, "that all employees must log into LEAP [the MetroHealth Learning Engagement & Performance System] to confirm their vaccination status – even those who have already registered to receive a 'NM' (No Mask) sticker."

20. The exemption request form provided by MetroHealth included the following statements and requirements for those seeking a religious exemption to the COVID-19 vaccine requirement:

> **SINCERELY HELD RELIGIOUS, ETHICAL OR MORAL BELIEFS** - Documented and sincerely held religious, moral, or ethical belief, practice, or observance that prevents participation in the COVID-19 vaccination program
>
> **THE FOLLOWING DOCUMENTATION MUST BE SUBMITTED WITH THE EXEMPTION REQUEST BY THE DEADLINE:**
> - Personal narrative/statement detailing the sincerely held religious, moral, or ethical belief, practice, or observance preventing vaccination, including support that this is a consistent and sincerely held belief
> - Any other documentation or information supporting the nature of the belief and why it prevents the individual from participating in the vaccination program, including supporting evidence that this is a consistent and sincerely held belief
> - If applicable, signed documentation from clergy or other religious official detailing the beliefs/tenets that prevent vaccination. Where applicable, the statement should be on the faith organization's letterhead.

21. In addition to Plainittiffs requesting exemption from the MetroHealth COVD-19 vaccination requirement, many Plaintiffs also requested a religious exemption from MetroHealth's flu vaccination requirement.

22. The exemption request form provided by MetroHealth included the following statements and requirements for those seeking a religious exemption to the flu vaccine requirement:

> **DEEPLY HELD RELIGIOUS, ETHICAL OR MORAL BELIEFS** - Documented and deeply held religious, ethical or moral beliefs that prevent participation in the influenza vaccination program.

**EMPLOYEE ACTION \*\*\***
- Personal narrative/statement detailing the religious, ethical or moral beliefs.
- Other documentation on the nature of the belief and why it prevents the employee from getting the influenza vaccine, including supporting evidence that this is a consistent and deeply held belief.
- If applicable, statement and signature of clergy or other religious official detailing the beliefs/tenets that directly conflict with influenza vaccination within 5 business days of submitted request.   The statement should be on the faith organization's letterhead.
- Statements by other witnesses or other documentation confirming the validity or history of the individual's belief within 5 business days of submitted request.

23. Many Plaintiffs who submitted a religious exemption request for either the COVID-19 or influenza vaccination requirement received a communication from MetroHealth that their exemption form had been received, and that, "A member of HR will reach out to you should we need any additional information.  Please know that we are receiving many requests and each will take time to review.  A decision will be communicated to you in the coming weeks."

24. Other Plaintiffs received the following response: "Your COVID-19 and Flu exemption request forms and supporting documentation were received and will be reviewed.  We are carefully reviewing each exemption request that is submitted.  At this time, you are considered to be in compliance with MetroHealth's vaccination program.  We will be in touch with a formal response to your request and provide instructions on applicable next steps."

25. On October 15, 2021, CEO Boutros sent a communication to members of MetroHealth management that stated:

> On August 26, 2021, I announced that effective October 30, 2021, COVID-19 vaccination is a required condition of employment.  Since that announcement, we have urged everyone to fill out their status or request an exemption on the LEAP system. . . . [E]very employee who has confirmed their vaccination will receive an additional $250.00 recognition bonus in your paycheck before the end of the year.  In addition, anyone who complete their vaccination by October 30, 2021, will also receive the $250 recognition bonus.

> We received over 400 exemption requests.  Because of the seriousness of this issue and the diligence by which we evaluation each one of these requests, employees who have submitted a completed exemption request as of October 30, 2021 will be deemed compliant until their exemption is determined.

We expect to review the exemption requests on a rolling basis, and all exemption requests will be determined no later than December 31, 2021. If an exemption is denied, the employee will have 30 days to get fully vaccinated to continue in their employment at MetroHealth.

As of today, there are only 115 individuals who have not completed the Vaccination LEAP Module and are not on leave.  If you are one of these people, I urge you to go to LEAP where you can access the Vaccination Module by October 30, 2021.

All employees who do not complete the LEAP module (with an exemption request or documentation of vaccination) will be suspended for two weeks effective October 31, 2021.  At the end of the 2-week suspension, those individuals who still have NOT completed the Vaccination LEAP Module will be terminated as of November 14, 2021.

26.   On November 4, 2021, the Biden-Harris Administration announced its emergency COVID-19 vaccination mandate under the interim emergency regulation issued by the Centers for Medicare & Medicaid Services ("CMS") for employees of health care facilities that participate in the Medicare and Medicaid programs.

27.   That interim emergency regulation was subsequently modified to change the time for facilities to comply with the vaccine mandate.

28.   As expressly stated in the November 4th press release by CMS, "[t]he regulation also provides for exemptions based on recognized medical conditions or religious beliefs, observances, or practices" and that "[f]acilities must develop a similar process or plan for permitting exemptions in alignment with federal law."

29.   The federal legal requirements pertaining to requests for religious exemptions were reiterated in the original interim regulation and its subsequent update(s).

30.   In December, MetroHealth requested additional information from many of those individuals who had submitted a religious exemption request, stating therein:

We received your request for an exemption from The MetroHealth System's Vaccination Program requirements (Policy HR-66) for COVID-19 and/or flu.  Your request was submitted as a non-medical/religious exemption.  We appreciate the information you have already shared with us regarding your religious beliefs.  In order to further review your request for an exemption, we need some additional information from you.

You have indicated that your religious beliefs prevent you from getting the vaccine(s) because, among other things, fetal cells were used in the development of the vaccines.

We would like to better understand the scope and impact of your beliefs.  You are required to provide responses to the question(s) below in your own words.

1.  Given your religious beliefs, how do you plan to make decisions regarding the other vaccines and medications that use descendant/cloned fetal cells in their development and production?

2.  Many religious leaders, including the Roman Catholic Pope and Jewish leaders, have stated that even though there was use of descendant/cloned fetal cells in the development of the COVID-19 vaccines, their faith is best honored by getting the vaccine.

The attached document contains information on the use of descendant/cloned fetal cells in the COVID-19 vaccines and other vaccines/medications that may be helpful in responding to these questions.

We would ask that you provide your response(s) within seven (7) calendar days from the date of this letter.  Your response(s)should be submitted to Human Resources at HRvaccinationprogram@metrohealth.org.  While you are not required to provide this further information, please know that this information has been deemed important for consideration of your request.  If you do not submit further information, your request will continue to move forward in the process.

31. The document attached to the above communication included grossly false, inaccurate, and misleading information.  [Exhibit 1].

32. On or about December 15, 2021, email communication(s) were sent by the MetroHealth Human Resources Department ("HR"), stating:

MetroHealth is currently processing your request for an exemption from the Vaccination Program requirements (Policy HR-66) for COVID-19 and/or flu, along with many other such requests. We had most recently announced that MetroHealth's exemption decisions would be communicated by December 31, 2021.

Unfortunately, most decisions regarding exemption requests will not be communicated by this deadline. **MetroHealth will now be issuing a decision on your request no earlier than January 31, 2022**. This is due to constraints on operations from the current COVID-19 surge, as well as changes in guidance and requirements surrounding the COVID-19 vaccination and our healthcare environment.  If your exemption request is denied and you are required to be vaccinated, you will be given 45 days to receive your complete vaccination.

In the meantime, all employees who are not fully vaccinated will need to follow MetroHealth's updated COVID-19 Infection Prevention masking and PPE requirements. **Currently, in non-clinical and administrative settings, unvaccinated employees must wear a surgical mask at all times (NOT a cloth mask) and must maintain social distancing whenever possible**.  Because eating requires removal of one's mask, unvaccinated employees may not eat in congregate (group) environments such as the cafeteria, a populated break room, or with others even in small groups. **In clinical settings, unvaccinated employees must wear a surgical mask or N95 as appropriate, and eye**

**protection is strongly recommended**.  Please see the updated PPE [personal protective equipment] instructions for more detail.  [. . .]

We know waiting for your exemption decision is stressful, and we appreciate your understanding and patience.

33.  On February 7, 2022, MetroHealth issued a blanket denial of all religious exemption requests.

34.  In communicating that denial, MetroHealth stated that all requests were "carefully reviewed by a qualified team" and "were considered with respect and care, and reviewed in accordance with established standards under applicable law."

35.  Despite whether, in MetroHealth's opinion, any request did or did not establish a "basis for exemption" all such requests were denied because, as stated, in MetroHealth's opinion,

**. . . reasonable accommodation is not available given your role and job duties, and MetroHealth would face undue hardship in granting your exemption request**.  You are not eligible for fully remote work, and alternative protocols, such as masking, other protective equipment, regular testing, and social distancing, are far less effective and would place you, patients, coworkers, and others at significant risk.  Because your position has already been assessed and been determined ineligible for fully remote work, and no other reasonable accommodation is available, this decision is not subject to appeal.

36.  MetroHealth further stated in that communication,

**Because your exemption requests are denied, you must be fully vaccinated for COVID-19 and flu, and submit documentation within 45 days of the date of this letter in order to remain employed by MetroHealth.**  If you elect to receive a two-dose series (Pfizer or Moderna), please be aware that you will need to receive your second dose and submit documentation by the 45-day deadline.  [. . .]  If proof of completed vaccination is not submitted to HRvaccinationProgram@metrohealth.org within the 45-day deadline, then your inaction will be considered voluntary resignation of employment with MetroHealth.

37.  MetroHealth also stated that during the 45-day interim, all unvaccinated employees would be subject to additional masking and social distancing requirements not required of vaccinated employees.

38.  MetroHealth offered no explanation as to why some employees who requested a medical exemption to the vaccination requirements were able to be accommodated, but no employee who submitted a religious exemption request could be accommodated.

39. Many employees who were denied any accommodation were then currently working remotely or had successfully worked remotely for extended periods during the preceding two years.

40. Moreover, many employees that were denied any accommodation had worked successfully in direct patient care during the preceding two years, during the darkest days of the pandemic, and were now denied any accommodation only after COVID case numbers were declining.

41. The MetroHealth Weekly COVID Brief for the week of February 14, 2022, stated, "As COVID numbers continue to trend down, we will not be producing a COVID-19 Brief on a weekly basis.  Watch for the next COVID-19 Brief in March."

42. That same communication indicated that the current hospital wide census of admitted COVID-19 patients was only 25, and stated, "Due to the continued decline in community incidence of COVID-19, The MetroHealth System is updating its meeting and masking rules for employees," but still requiring full masking and social distancing for unvaccinated employees.

43. That communication also included the following chart showing the declining COVID numbers for the preceding six weeks:

| Week Ending | **Influenza** Total Tests | Flu A Positive (% +) | Flu B Positive (% +) | **RSV** Total Tests | RSV Positive (%+) | **SARS-CoV-2** Total Tests | SARS-CoV-2 Positive (% +) |
|---|---|---|---|---|---|---|---|
| 1/8/22 | 528 | 5(0.9%) | 0 | 8 | 2 (25%) | 3590 | 1768(49.2%) |
| 1/15/22 | 388 | 5(1.2%) | 2(0.5%) | 10 | 0 | 1838 | 593(32.2%) |
| 1/22/22 | 282 | 2(0.7%) | 2(0.7%) | 5 | 1(20.0%) | 1103 | 233(21.1%) |
| 1/29/22 | 222 | 5(2.2%) | 0 | 3 | 0 | 902 | 145(16.1%) |
| 2/5/22 | 187 | 10(5.3%) | 0 | 1 | 0 | 755 | 85(11.3%) |
| 2/12/22 | 264 | 9(3.4%) | 0 | 2 | 0 | 853 | 65(7.6%) |

44. MetroHealth was fully aware of the declining case numbers prior to its February 7, 2022 email denying all religious exemption requests.

45. From the outset of the availability of the COVID-19 vaccines, Plaintiffs faced discriminatory and retaliatory conduct, disclosure of their private health information, and were forced to live under the unbearable and constant threat of termination.

46. As late as the morning of March 15, 2022, Plaintiffs were being told by members of MetroHealth management that they must be vaccinated by March 23 or face suspension and loss of employment based on their noncompliance being considered a "voluntary resignation."

47. Plaintiffs were offered a choice that was no choice—either violate their sincerely held religious beliefs or face termination.

48. Plaintiffs fail to grasp how each of their positions could be accommodated for over a year after COVID-19 vaccines became available, but suddenly could no longer be so, nor why they were not informed of such immediately upon submitting a request for religious exemption.

49. From late October of 2021 through January of 2022, MetroHealth offered significant financial incentives for all employees to work overtime hours.  Unvaccinated employees were not excluded from such incentives, despite being told they represented the greatest health risk to patients and coworkers.  There was apparently no undue harship to MetroHealth at that time.

50. It would appear that no other conclusion can be drawn than that MetroHealth exploited these employees during the height of need, and then simply sought to cast them aside with absolutely no regard for their sincerely held religious beliefs.

51. However, on March 15, 2022, only hours before a federal injunction action was to be filed, MetroHealth did an about face and granted all previously denied religious exemption requests, regardless if MetroHealth had previously said those requests did or did not state a "basis for exemption."

52. In a system-wide communication announcing the change, CEO Boutros stated, "I believe the costs and burdens in granting non-medical exemptions have changed in a material way."

53. CEO Boutros also stated in that same communication, "I want to start by apologizing to each you who requested exemptions and waited anxiously for a response.  I'm sorry that this also

created stress for our managers and leaders who wanted to support you and make sure we had enough staff to meet the needs of our patients."

54. However, in communication sent the next day, March 16, 2021, MetroHealth also stated,

> **MetroHealth will permit you to work on-site, through the end of the year 2022, with masking, social distancing, and other safety protocols addressed below. If you are currently working remotely, you will be permitted to work on-site as appropriate for your position.** [. . .] **In non-clinical and administrative settings, unvaccinated employees must wear a surgical mask at all times (NOT a cloth mask) and must maintain social distancing whenever possible.** Because eating requires removal of one's mask, unvaccinated employees **may not eat in congregate (group) environments** such as the cafeteria, a populated break room, or with others even in small groups.

55. Of note, the CMS Omnibus COVID-19 Health Care Staff Vaccination Interim Final Rule issued "guidance" on implementation of the rule, providing therein deadlines for various states.

56. Healthcare facilities in Ohio were required by February 14, 2022, to have "all policies and procedures in place for ensuring staff are fully vaccinated, providing exemptions, and tracking staff vaccinations" and that staff "must have received, at a minimum, the first dose of a primary series or a single dose COVID-19 vaccine prior to staff providing any care, treatment, or other services for the facility and/or its patients." [Exhibit 2].

57. Facilities in Ohio were further required by March 15, 2022, to have staff "fully vaccinated (with the exception of those who have been granted exemptions from the COVID-19 vaccine or for those staff for whom the COVID-19 vaccination must be temporarily delayed, as recommended by CDC." [Exhibit 2].

58. MetroHealth's reasoning for first denying all religious exemption requests and then *en masse* granting of accommodations for all such previously denied requests had nothing to do with COVID case counts but was a coldly calculated scheme to try to force as many employees as possible to get vaccinated and to simply meet the deadlines imposed by the CMS mandate.

59. This scheme unmasks MetroHealth's apparent lack of concern for patient and staff safety, and instead reveals a complete and utter disdain for Plaintiffs' sincerely held religious beliefs.

**NAMED PLAINTIFFS**
**(Non-Employed Group)**

**Frank Savel – Named Plaintiff 1**

60.  Frank Savel (Named Plaintiff 1) is a Registered Nurse that was employed in the Medical Intensive Care Unit for Defendant MetroHealth.

61.  Mr. Savel was employed at MetroHealth for over 24 years and had five years of military service prior to that.

62.  Mr. Savel applied for an exemption to the MetroHealth vaccine mandate on September 2, 2021 based upon his sincerely held religious belief.

63.  After a five-month delay by MetroHealth, during which accommodations were apparently possible, Mr. Savel received a response to his exemption request on February 7, 2022, stating:

> Your request for COVID-19 vaccination exemption has been carefully considered and is denied.  The information you provided established basis for an exemption.  However, reasonable accommodation is not available given your role and job duties, and MetroHealth would face undue hardship in granting your exemption request.  You are not eligible for fully remote work, and alternative protocols, such as masking, other protective equipment, regular testing, and social distancing, are far less effective and would place you, patients, coworkers, and others at significant risk.  Because your position has already been assessed and been determined ineligible for fully remote work, and no other reasonable accommodation is available, this decision is not subject to appeal.

64.  He, along with many others, were told by MetroHealth they must be fully vaccinated within 45 days to remain employed by MetroHealth.

65.  On February 14, 2022, Mr. Savel filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying his valid religious exemption request.

66.  By March of 2022, he was only 20 months short of being able to retire with full unreduced benefits.

67.  He also had 1,250 hours of accumulated sick time which he was entitled to cash out at fifty percent upon retirement.

68. When faced with the prospect of losing his job or violating his sincerely held religious belief, Mr. Savel left MetroHealth on March 4, 2022, stating in his resignation letter, "I am resigning my position of 29 years, under protest of the illegal directive communicated by MHS management, dated 2/7/22."

69. Mr. Savel's resignation was not voluntary, as he was not provided any meaningful choice or reasonable alternative.

70. Due to Mr. Savel's seniority at MetroHealth, he no longer was required to work weekends or be assigned to "float" duty to other floors.  He also served on the Rapid Response Team, a position he enjoyed.

71. In addition to losing the above benefits and perks, Mr. Savel has had to give up working with the many friends he had made over his 25-year employment with MetroHealth.

72. MetroHealth never contacted Mr. Savel regarding their about-face announced March 15, 2022, to invite him back, only eleven days after he resigned.

73. In addition to having created a hostile and discriminatory work environment and the stress and anxiety caused thereby, MetroHealth also coerced Mr. Savel into leaving his position short of his being able to receive his full retirement benefits through OPERS.

74. Around this same time, Mr. Savel's wife was diagnosed with cancer.  Mr. Savel's insurance benefits at MetroHealth did not require co-payments or out of pocket expense for medical care. As a result of being forced out his job, Mr. Savel incurred additional expense for his wife's medical care.

75. In total, Mr. Savel has been damaged well in excess of $400,000.00 as a direct and proximate cause of MetroHealth's actions and omissions, for which MetroHealth is liable to him.

## Danielle Crockett – Named Plaintiff 2

76. Danielle Crockett (Named Plaintiff 2) is a Registered Nurse that was employed in an outpatient clinic for Defendant MetroHealth.

77. Ms. Crockett immediately applied for an exemption to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

78. Over a period of several months, MetroHealth constantly moved deadline dates and was evasive in providing answers to inquiries regarding the status of her exemption request.

79. On February 7, 2022, MetroHealth denied her request, stating she must be fully vaccinated within 45 days to remain employed by MetroHealth and further stating the decision was not subject to appeal.

80. When faced with the prospect of losing her job or violating her sincerely held religious belief, Ms. Crockett's last day of work at MetroHealth was March 14 2022, having been left with no other choice but to resign two weeks earlier.

81. She was not invited back the next day when MetroHealth did an about-face on their previous denial of all religious exemption requests.

82. Ms. Crockett's resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

83. Ms. Crockett had to take a position with another employer with a significant loss in pay.

84. On March 8, 2022, Ms. Crockett filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid exemption request.

85. In addition to her reduction in income, Ms. Crockett forfeited significant benefits she would have received through OPERS.

86. Further, Ms. Crockett is now subject to the Windfall Elimination Provision affecting any retirement benefits she is able to accumulate under Social Security, significantly increasing the number of years she must work to obtain retirement benefits.

87. Instead of looking forward to retiring at age 55 with her husband and travel, she must now continue to work well beyond that age to receive retirement benefits, and only then at a significantly reduced rate.

88. In addition to her financial damages, Ms. Crockett was subjected to severe emotional turmoil due to MetroHealth's 'gaslighting' and constant threats of termination, resulting in stress at home and medical issues for Ms. Crockett.

89. Ms. Crockett has been damaged in an amount in excess of $500,000.00 as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Richard Greco – Named Plaintiff 3

90. Richard Greco (Named Plaintiff 3) was a Patrol Officer employed by Defendant MetroHealth.

91. Mr. Greco applied for an exemption to the MetroHealth vaccine mandate based upon his sincerely held religious belief.

92. On February 7, 2022, MetroHealth denied his request, stating that while he had provided a sufficient basis for a religious exemption, no accommodation could be made.  He was further told he must be fully vaccinated within 45 days to remain employed by MetroHealth and that the decision was not subject to appeal.

93. When faced with the prospect of losing his job or violating his sincerely held religious belief, Mr. Greco left MetroHealth.

94. Mr. Greco's resignation was not voluntary, as he was not provided any meaningful choice or reasonable alternative.

95. Mr. Greco filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying his valid exemption request.

96. In addition to having to seek other employment, a decision he did not want, Mr. Greco was subjected to severe stress, harassment, and ridicule in the work environment created by MetroHealth.

97. Mr. Greco has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Veronica Adams – Named Plaintiff 4

98. Veronica Adams (Named Plaintiff 4) is a Registered Nurse that was employed on an as needed basis in Clinical Resources by Defendant MetroHealth.

99. Ms. Adams applied for an exemption to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

100. After suffering anxiety caused by threats of termination and the hostile work environment created by MetroHealth, and after being led on by MetroHealth for months regarding her religious exemption request, when faced with the prospect of losing her job or violating her sincerely held religious belief, Ms. Adams left MetroHealth in December 2021.

101. Ms. Adams' resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

102. Ms. Adams had to take a position with another employer with a significant loss in pay.

103. In addition to loss in income, Ms. Adams was subjected to severe emotional stress and was demeaned for her beliefs, resulting in significant therapy expenses related thereto.

104. Ms. Adams has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Angela Allison – Named Plaintiff 5**

105. Angela Allison (Named Plaintiff 5) was an outpatient Pediatric Clinical Nurse employed part time by Defendant MetroHealth for over eight years.

106. Ms. Allison applied for an exemption to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

107. After enduring the hostile and intolerable work environment created and condoned by MetroHealth, when faced with the prospect of losing her job or violating her sincerely held religious belief, Ms. Allison left MetroHealth in November 2021.

108. Ms. Allison's resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

109. Ms. Allison's accumulated pension withholdings in OPERS would have been fully vested upon her completing ten years of employment at MetroHealth.

110. Ms. Allison is currently unemployed.

111. In addition to her loss in income, Ms. Allison was subjected to severe emotional stress and was singled out and demeaned by management and staff for her beliefs; but, because she no longer had insurance coverage for therapy, she has been unable to receive the help she needs.

112. Ms. Allison has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Jessica Betancourt – Named Plaintiff 6**

113. Jessica Betancourt (Named Plaintiff 6) is a Registered Nurse that was employed by Defendant MetroHealth for over 14 years.

114. Ms. Betancout applied for an exemption to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

115. Ms. Betancourt feared for her own health and wellbeing and believed she would suffer irreversible health problems if she continued to endure the work environment at MetroHealth.

116. Despite reaching out to the Employee Assistance program and members of management, she received little help or assurance from MetroHealth.

117. After enduring the hostile and intolerable work environment created and condoned by MetroHealth, when faced with the prospect of losing her job or violating her sincerely held religious belief, Ms. Betancourt left MetroHealth in November 2021.

118. Ms. Betancourt's resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

119. Ms. Betancourt had to take a position with another employer with a loss in pay and medical benefits, as well as foregoing her retirement benefits through OPERS.

120. Ms. Betancourt was subjected to severe emotional stress and anxiety as a direct result of MetroHealth's actions that created significant and debilitating health issues.

121. Ms. Betancourt has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Tina Kenney – Named Plaintiff 7**

122. Tina Kenney (Named Plaintiff 7) was a Mental Health Counselor employed by Defendant MetroHealth for nearly four years. Based upon prior work experience in the public sector, Ms. Kenney had accumulated over 15 years of service in OPERS.

123. Ms. Kenney sent an email to CEO Boutros on August 19, 2021, over her concern related to rumors of a forthcoming vaccine mandate. Mr. Boutros's response the next day gave her hope, only to have it dashed one week later when MetroHealth announced its vaccine mandate.

124. Ms. Kenney worked in a satellite office and was able to conduct her work virtually. Despite this, she was still told she needed to comply with the MetroHealth vaccine mandate.

125.  On September 10, 2021, Ms. Kenney applied for an exemption to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

126.  Despite requesting confirmation of receipt of her religious exemption request, she received a canned response that said simply, "Decisions will be provided to employees seeking exemptions prior to the vaccine program deadline."

127.  The vaccination deadline given at that time was October 30, 2021.

128.  She never received a decision from MetroHealth on her request for religious exemption by the deadline.

129.  When faced with the prospect of losing her job or violating her sincerely held religious belief, Ms. Kenney left MetroHealth effective November 5, 2021.

130.  Ms. Kenney's resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

131.  Ms. Kenney has become self-employed and now incurs significant additional expenses she did not have as an employee with MetroHealth.

132.  Ms. Kenney also lost significant retirement benefits through OPERS.

133.  She had to forego over 300 hours of accumulated paid time off, which she was reserving in order to have the ability to care for her son and aging mother.

134.  Ms. Kenney provides care for her son, and now is faced with coordinating his care without family leave or paid time off, as well as faced with significant increases to those healthcare costs.  His access to healthcare has suffered as a result.

135.  Since being forced out of MetroHealth, Ms. Kenney's mother had to undergo a surgical procedure for which Ms. Keney was unable to take time off to assist with her care and support.

136. In July of 2022, she was informed by her licensing board that MetroHealth had filed a complaint against her, asserting that she had allegedly deleted a document.  Ms. Kenney was cleared of any wrongdoing in September of 2022.

137. Despite Ms. Kenney's efforts to stay in touch professionally with her colleagues, subsequent to MetroHealth's retaliatory tactic described above, she has been refused contact from a key MetroHealth colleague.

138. Ms. Kenney has been subjected to severe stress and anxiety due to MetroHealth's actions, for which she has had to seek counseling and chiropractic services.

139. Ms. Kenney has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Sheila Petro – Named Plaintiff 8**

140. Sheila Petro (Named Plaintiff 8) is a Registered Nurse that was employed in a Step-Down Intensive Care Unit for Defendant MetroHealth.  She worked for MetroHealth for 24 and a half years.

141. Ms. Petro was discouraged from applying for an exemption to MetroHealth's vaccine mandate because she was told that MetroHealth was not accepting any exemptions.

142. When faced with the constant threat of termination or retiring early with significantly reduced benefits, Ms. Petro was left with no choice but to retire.

143. She had not intended to retire until completing 30 years of service, so as to qualify for retirement health coverage and a full pension under OPERS.

144. Ms. Petro's resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

145. Ms. Petro had to take a position with another employer with a loss in pay.

146. She also lost healthcare coverage and life insurance for herself and her spouse.

147. In addition to her financial damages, Ms. Petro was subjected to constant pressure from MetroHealth administration and management, believing she would be 'perp walked' from the property like a criminal if she did not get vaccinated.  A betting pool was formed on whether she would give in to the vaccination mandate.  In short, she was made to feel like an outcast, despite her over 24 years of faithful service.

148. For two years, the unit where Ms. Petro worked was a COVID unit, and Ms. Petro worked diligently and faithfully, along with her vaccinated co-workers, caring for COVID patients.

149. Ms. Petro has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Jennifer Zammert – Named Plaintiff 9

150. Jennifer Zammert (Named Plaintiff 9) was a Nursing Assistant employed by Defendant MetroHealth for 18 years.

151. Ms. Zammert immediately applied for an exemption to the MetroHealth vaccine mandate in August of 2021, based upon her sincerely held religious belief.

152. Ms. Zammert received no response for nearly two months to her exemption request, feeling constantly pressured by MetroHealth's inaction and 'bribes' offered to vaccinated employees.

153. When faced with the prospect of losing her job or violating her sincerely held religious belief, Ms. Zammert left MetroHealth in October of 2021.

154. She had no intention of ever leaving MetroHealth until retiring after another 30 years of service, at which time she would have received full retirement benefits under OPERS.

155. Ms. Zammert's resignation was not voluntary, as she was not provided any meaningful choice or reasonable alternative.

156. She had to take a position with another employer outside of healthcare with a significant loss in pay.

157. Ms. Zammert lost 18 years of service accrual time she had invested in OPERS.

158. She also had achieved the maximum available annual vacation time of six weeks, and had accumulated 250 hours of paid time off, all of which she lost.

159. She also lost healthcare coverage for herself and her family.

160. Ms. Zammert has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**(Employed Group)**

**Isaac Allison – Named Plaintiff 10**

161. Isaac Allison (Named Plaintiff 10) is a Registered Nurse employed by Defendant MetroHealth.

162. Mr. Allison submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief.

163. In December, MetroHealth communicated several follow-up questions to Mr. Allison questioning the basis for his sincerely held religious belief and included a document with false information regarding the use of fetal cells in the "development and production" of other common medications.

164. Mr. Allison did not give permission for any of his private healthcare information to be shared with others; and yet, despite this, members of management knew of his vaccination status and repeatedly asked him of his future intentions, often doing so in a non-private setting. Management also disclosed to Mr. Allison others of his co-workers who were unvaccinated.

165. Despite being told by MetroHealth that his request established a "basis for exemption," his request was denied because MetroHealth claimed it would face undue hardship in granting his exemption request, and further, that no accommodations were available to him.

166. On February 9, 2022, Mr. Allison filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying his valid religious exemption request.

167. Mr. Allison and his wife endured constant stress created by MetroHealth's repeated threats of termination, resulting in him reducing his hours so he could look for another job in case MetroHealth carried through on its threats.

168. Mr. Allison has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Megan Alwine – Named Plaintiff 11**

169. Megan Alwine (Named Plaintiff 11) is a Registered Nurse employed by Defendant MetroHealth.

170. On September 20, 2021, Ms. Alwine submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  Ms. Alwine also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

171. Ms. Alwine received no response for months to her timely requests for exemption, resulting in stress and anxiety created by MetroHealth's lack of a timely response.

172. During this time, Ms. Alwine was caring for her terminally ill mother, and the constant threat of termination caused significant stress-related issues and robbed her of the ability to make her mother's last days as pleasant as possible.

173. Ms. Alwine suffered severe emotional distress to the point that she began to have frequent, never before experienced, panic attacks.  Additionally, she developed muscular tension that caused painful decreased range of motion in her neck, frequent tension headaches, and has suffered from loss of sleep.

174. Ms. Alwine was excluded from eating in break rooms with other employees yet was not given an alternative option or designated space to eat.  MetroHealth's "No Mask" sticker program segregated employees, including Ms. Alwine, and further disclosed otherwise private and confidential health information.

175. Ms. Alwine also endured harassment and rude comments from other employees due to the negative and hostile work environment created by MetroHealth.

176. On February 7, 2022, MetroHealth informed Ms. Alwine that her flu vaccine exemption request, "did not establish basis for an exemption."  In that same communication, she was told that her COVID vaccine exemption request, "established basis for an exemption.  However, reasonable accommodation is not available given your role and job duties, and MetroHealth would face undue hardship in granting your exemption request."

177. Ms. Alwine subsequently filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption requests.

178. Ms. Alwine has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Deshone Boone – Named Plaintiff 12**

179. Deshone Boone (Named Plaintiff 12) is a Patient Transporter employed by Defendant MetroHealth.

180. Mrs. Boone submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

181. Mrs. Boone received no response for months to her timely request for exemption, resulting in stress and anxiety created by MetroHealth's lack of a timely response.

182. Mrs. Boone suffered severe anxiety created by the constant threat of the loss of her livelihood and ability to provide for her family and life's basic necessities.  This led to hair loss, headaches, neck and shoulder pain, and loss of sleep.

183. Many months after submitting her exemption request, MetroHealth informed Mrs. Boone that her request, "established basis for an exemption.  However, reasonable accommodation is not available given your role and job duties, and MetroHealth would face undue hardship in granting your exemption request."

184. On February 10, 2022, Mrs. Boone filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption requests.

185. Mrs. Boone has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Michelle Butler – Named Plaintiff 13**

186. Michelle Butler (Named Plaintiff 13) is a Graduate Medical Education Coordinator employed by Defendant MetroHealth for over 26 years.

187. After MetroHealth announced its COVID vaccination mandate on August 26, 2021, Ms. Butler sought and received documentation from MetroHealth on August 31, 2021, that stated:

> THE FOLLOWING DOCUMENTATION MUST BE SUBMITTED WITH THE EXEMPTION REQUEST BY THE DEADLINE:
>
> RELIGIOUS/ETHICAL/MORAL
> - Personal narrative/statement detailing the sincerely held religious, moral, or ethical belief, practice, or observance preventing vaccination, including support that this is a consistent and sincerely held belief
> - Any other documentation or information supporting the nature of the belief and why it prevents the individual from participating in the vaccination program, including supporting evidence that this is a consistent and sincerely held belief
> - If applicable, signed documentation from clergy or other religious official detailing the beliefs/tenets that prevent vaccination. Where applicable, the statement should be on the faith organization's letterhead.

188. Ms. Butler inquired of Kristen Kim in MetroHealth Human Resources, through the HRvaccinationprogram@metrohealth.org email address, "What is meant by "supporting documentation"? Should I copy supporting documentation from the Bible or do you mean an attestation form from my pastor? [I]n what instances does 'if applicable' become applicable? [. . .] Is/are there any reason(s) you would refuse to accommodate these exemptions?"

189. Ms. Kim responded, "Attestation from your pastor on the organization's letterhead would be preferred. Attached is the form for the flu vaccine as well. I will look into your question regarding the reason(s) any requests would not be accommodated and will circle back to you."

190. Ms. Butler received no further response to her questions.

191. On September 17, 2021, Ms. Butler submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief. She also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

192. Ms. Butler received no response for months to her timely requests for exemption, resulting in overpowering stress worrying about losing her income and health benefits for her family.

193. On February 7, 2022, MetroHealth denied Ms. Butler's requests for exemption, and stated that the decision was not subject to appeal.

194. Despite this, on February 11, 2022, Ms. Butler submitted an appeal letter to MetroHealth Human Resources, pointing out that she had a private office, was also capable of performing her work remotely, and had done so successfully for extended periods during the preceding two years, and requesting to continue to perform her job duties just as she had been doing. In other words, absolutely no accommodation was needed.

195. She stated therein, "We were celebrated as heroes by the organization for coming to work over the last two years. Now you are terminating these hero's careers. [ . . .] I kindly request a formal response detailing specifically the reasons for which you cannot approve my religious

exemption for MetroHealth's COVID-19 and Flu vaccination."  She received no such response.

196. On March 2, 2022, Ms. Butler filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption requests.

197. Despite having previously been able to work remotely, she is now denied that option, and is once again under the threat of termination, having received communication on October 26, 2022, that exemption requests for this year's flu vaccine,

> . . . that did not meet the supporting documentation requirements may be subject to denial.  Employees whose exemption requests are denied will be required to receive the flu vaccine to remain employed by MetroHealth.  Failure to comply with the flu vaccine requirement will constitute a violation of a serious safety policy; compliance is also a condition of employment.  **Accordingly, employees who do not achieve compliance by the November 9 deadline will be subject to suspension, up to and including voluntary separation of employment with MetroHealth.**  Executive and departmental leaders receive bi-weekly reports from HR of employee non-compliance and are addressing gaps in adherence to the policy requirement.

198. That same communication also reiterated that "additional supporting documentation" is required for such exemption requests.

199. Ms. Butler feels used, particularly in light of her length of employment, and was recently requested by management in a group meeting to suggest someone who might be able to replace her in her position.

200. Ms. Butler is only a few years from being eligible for full retirement benefits under OPERS and is now once again faced with the threat of severe economic harm.

201. MetroHealth has been, and is still currently, engaged in a purposeful plan to purge itself of those employees with sincerely held religious beliefs that prevent them from vaccination.

202. These retaliatory tactics by MetroHealth are widespread and likely to continue unabated unless injunctive relief is granted.

203. Ms. Butler has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Robert Cleek – Named Plaintiff 14

204. Robert Cleek (Named Plaintiff 14) is a Police Officer employed by Defendant MetroHealth for over seven years.

205. Mr. Cleek submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief.

206. On February 7, 2022, MetroHealth informed Mr. Cleek that his request was denied, and further that "reasonable accommodation is not available given your role and job duties, and MetroHealth would face undue hardship in granting your exemption request. [. . .] As a result of this decision, you must be fully vaccinated for COVID-19 and submit documentation within 45 days of the date of this letter in order to remain employed by MetroHealth."

207. Mr. Cleek filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying his valid religious exemption request.

208. He also sought assistance from his union, but none was given.

209. Mr. Cleek has faced a hostile work environment as a result of his sincerely held religious belief. In a position where trust is essential, the ability to trust fellow employees, management, and administration has been completely eroded by MetroHealth's discriminatory conduct.

210. In addition to the hostile work environment, Mr. Cleek has been subjected to the extreme stress created by constant worry over losing his employment and his ability to provide for his family.

211. Mr. Cleek has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Stacey Collier – Named Plaintiff 15**

212. Stacey Collier (Named Plaintiff 15) is a Registered Nurse employed by Defendant MetroHealth for over seven years.

213. Ms. Collier submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted all additional documentation requested by MetroHealth.

214. Ms. Collier endured increasingly stressful pressure at work.  On an almost daily basis, Ms. Collier was pressured by management to discuss her vaccination status.  After she eventually disclosed her position under persistent pressure to do so, she was led to believe by management that she would be terminated.

215. On February 7, 2022, MetroHealth informed Ms. Collier that her request was denied, despite the information she provided having "established basis for an exemption."  She was then told by management she would be taken off the work schedule.

216. On February 14, 2022, Ms. Collier sent the following communication to Human Resources:

> Hello,
> Thank you for your communication.  I'm emailing today seeking clarification on a few things.  Could you please share the number of people and qualifications of the exemption decision-making panel?
> In what way would my continued employment cause undue hardship to Metrohealth?
> If it is acknowledged that the detailed information I have submitted establishes a basis for exemption, why is it not being honored as part of Metrohealth's commitment to inclusion and diversity?
> Exemptions were submitted months ago- why were remote positions never proposed as an option prior to 2/7/22 and what effort will Metrohealth make to attempt to provide the same?
> Why did this decision take months when my exemption and follow up questions were required to be submitted in a significantly shorter period of time?
> Why have protocols such as masking, social distancing, testing and other use of PPE been effective at risk mitigation up until now?
> Lastly, I will not voluntarily resign from Metrohealth.  Resignation is not my choice.
> Warm regards,
> Stacey

217. After receiving no response, two days later, Ms. Collier informed her supervisor, "Just wanted to keep you in the loop. HR was notified that I am not resigning and I wanted to make you aware of the same. As of now, you can continue to schedule me being that I do not have a letter of termination and am not resigning. Thanks!"

218. Ms. Collier has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Heather Cowden – Named Plaintiff 16**

219. Heather Cowden (Named Plaintiff 16) is a Diagnostic Medical Sonographer employed by Defendant MetroHealth.

220. Ms. Cowden submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief. She also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement

221. On February 7, 2022, MetroHealth informed Ms. Cowden that her request was denied, stating that her flu exemption request "did not establish basis for an exemption," but that her COVID exemption request, "established basis for an exemption. However, reasonable accommodation is not available given your role and job duties, and MetroHealth would face undue hardship in granting your exemption request."

222. Two days later, Ms. Cowden sent an email to Human Resources, stating that she "will need an explanation as to what did not establish a basis for exemption" of her flu vaccination request.

223. Ms. Cowden also stated in that email, regarding her COVID exemption request:

> So, you are agreeing that I have a basis for an exemption but will not accept it. I have given you my firm beliefs that are tied to everything that is important to me and you are telling me that that is not good enough to keep me as an employee. "Reasonable accommodations" have been made for the last 5 months while I continued to provide exceptional care and carried my department short staffed while my coworkers **who were vaccinated** were out with COVID-19. It appears you have decided that is no longer acceptable. You allow employees who have tested positive for COVID to work if they

aren't exhibiting symptoms, you allow visitors to come in and out to see their loved ones who have COVID, and you allow family members to come with our patients which increases our chances of exposure but somehow my lack of vaccination causes undue hardship.  I DO NOT AGREE.

"your inaction will be considered voluntary resignation of employment with MetroHealth."  **I AM NOT, NOR WILL I BE RESIGNING MY POSITION**.  The definitions of the word "resign" are :  To give up an office or position (***I am not giving up my position, my position is being taken from me due to my beliefs***), to relinquish (a right, claim, agreement, etc.) (***I do not relinquish my position***).  To give or sign over, as to the control or care of another (***I am not giving up anything, it is being taken from me***).

I have worked at Metrohealth since 2013.  I have supported the STAR-IQ values, and treated people of all different backgrounds and beliefs with respect and compassion.  I will continue to do so even if you are telling me that my beliefs cause undue harm to Metrohealth.  I will not resign from my position as I do not see any reason why I cannot still work in my department as I always have.  If i am removed from my position it will not be with any agreement from me.  If I am removed from my department, I will accept that as you Terminating me for my beliefs.

224.  Unlike many other employees, Ms. Cowden actually received a response from MetroHealth Human Resources, which stated therein, "Failure to comply with CMS's healthcare worker vaccine mandate could result in MetroHealth's termination from the Medicare and Medicaid programs, which provide critical funds for our patients.  MetroHealth's Vaccination Program was designed, and continues to be reviewed, with careful consideration of the available science and the needs and concerns of our patients, workforce, and community."

225.  Ms. Cowden filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption requests.

226.  Ms. Cowden has been subjected to extreme stress caused by MetroHealth's actions and omissions that caused anxiety, panic attacks, and severe depression.  She was made to feel like less of a person and was made to feel like she personally was responsible for people dying.  She was pressured by management to be vaccinated or they would give her job to someone else.  And despite Ms. Cowden having to take training modules against discrimination, she herself was discriminated against because of her sincerely held religious belief.

227. She feels she can no longer trust MetroHealth with her own healthcare after reaching out for medical care for the mental health symptoms she was experiencing, only to be chastised and ridiculed for her not wanting to receive vaccinations.

228. Ms. Cowden has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Lori Domonkos – Named Plaintiff 17

229. Lori Domonkos (Named Plaintiff 17) is a Registered Nurse employed by Defendant MetroHealth.

230. Mrs. Domonkos submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

231. On February 7, 2022, MetroHealth informed Mrs. Domonkos that her request was denied, despite being told by MetroHealth that her request established a "basis for exemption."

232. That same day, Mrs. Domonkos filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

233. Mrs. Domonkos has been subjected to severe mental anguish created by constant worry over losing her employment.  She feels her religious beliefs were not considered or taken seriously. She is saddened that MetroHealth prides itself on inclusion and diversity but was ready to fire all employees that had a sincerely held religious belief that prevented them from vaccination.

234. She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.

235. Mrs. Domonkos has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Maria Elersich – Named Plaintiff 18**

236. Maria Elersich (Named Plaintiff 18) is a Registered Nurse employed by Defendant MetroHealth for 17 years.

237. Ms. Elersich submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief but received no decision on her request for five months.

238. Ms. Elersich was subjected to extreme pressure from management to receive the COVID vaccine.  She was excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

239. On February 7, 2022, MetroHealth informed Ms. Elersich that her request was denied, despite being told by MetroHealth that her request established a "basis for exemption."  Moreover, she was told that no accommodation was available to her.

240. In her seventeen years of employment with MetroHealth, she never encountered a single instance where a patient's religious or cultural preference was not accommodated.  She never heard a patient questioned or asked to explain or defend their religious belief.  Yet she was asked to do all these things, and then was denied any accommodation.

241. Ms. Elersich filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

242. Ms. Elersich has been subjected to severe mental anguish created by constant worry over losing her employment, resulting in anxiety, and sleeplessness.  She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.

243. Ms. Elersich has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Daneen Franczak – Named Plaintiff 19**

244. Daneen Franczak (Named Plaintiff 19) is a Registered Nurse employed by Defendant MetroHealth.

245. Ms. Franczak submitted an exemption request to the MetroHealth COVID vaccine mandate based upon her sincerely held religious belief but received no decision on her request for five months.  She also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

246. In March of 2022, Ms. Franczak filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

247. Ms. Franczak has been subjected to severe mental anguish created by constant worry over losing her employment, resulting in cardiac issues leading to emergency department visits on three occasions.  She ultimately had to undergo a surgical cardiac ablation in an attempt to resolve her tachycardia symptoms.  She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.

248. Ms. Franczak has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Ann Marie Gorman – Named Plaintiff 20**

249. Ann Marie Gorman (Named Plaintiff 20) is a Registered Nurse employed by Defendant MetroHealth and has less than four years of public service employment remaining until she can receive full retirement benefits through OPERS.

250. Ms. Gorman submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief but received no decision on her request for several months.

251. Ms. Gorman was subjected to extreme pressure from management to receive the COVID vaccine.  She was made to feel isolated by being excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

252. On February 7, 2022, MetroHealth informed Ms. Gorman that her request was denied.

253. On March 4, 2022, Ms. Gorman filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

254. Ms. Gorman has been subjected to severe mental anguish created by constant worry over losing her employment, resulting in anxiety, and sleeplessness.  She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.

255. Ms. Gorman has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Tina Gregory – Named Plaintiff 21**

256. Tina Gregory (Named Plaintiff 21) is a Registered Nurse employed by Defendant MetroHealth for over five years.

257. Ms. Gregory submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief and provided additional information when MetroHealth questioned her about that religious belief.

258. Ms. Gregory was subjected to extreme pressure from management to receive the COVID vaccine or face termination.  She was made to feel isolated by being excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

259. On February 7, 2022, MetroHealth informed Ms. Gregory that her request was denied, despite being told that her exemption request had "established basis for an exemption."  She was told

"reasonable accommodation" was not available to her, and that "MetroHealth would face undue hardship in granting" her exemption.

260. On February 10, 2022, Ms. Gregory filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

261. Ms. Gregory has felt threatened, harassed, and discriminated against because of her sincerely held religious belief, a feeling she has described as an "emotional rollercoaster." She also feels she was lied to by her employer MetroHealth.

262. Ms. Gregory has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Eric Heugel – Named Plaintiff 22**

263. Eric Heugel (Named Plaintiff 22) is a Registered Nurse employed by Defendant MetroHealth.

264. Mr. Heugel submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief. He also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

265. Mr. Heugel was bullied and belittled by MetroHealth for his sincerely held religious belief that prevented him from receiving vaccinations. He was further isolated and excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

266. On February 7, 2022, MetroHealth informed Mr. Heugel that both of his requests were denied, and that he had not established a basis for exemption.

267. Of note, Mr. Heugel's wife was also a nurse for MetroHealth and also received denial to her religious exemption request. After two very stressful months, she was able to obtain employment at another major Cleveland hospital system that accepted the exact same religious exemption request that had been denied by MetroHealth.

268. On February 23, 2022, Mr. Heugel filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying his valid religious exemption request.

269. Mr. Heugel felt subjected to one of the most stressful experiences he has ever gone through. With the constant looming threat of the loss of his livelihood, he felt his very way of life was being threatened.  He had to explore selling vehicles, reducing living expenses for he and his wife, and even contemplated the likelihood of bankruptcy as it seemed certain that MetroHealth was going to terminate him.

270. He remains fearful of losing his employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.  As early as March 25, 2022, though his exemption request for the influenza vaccine had been denied, he received an email stating that he would not be required to receive the flu vaccine that season but would be required to submit a new exemption in advance of the 2022-2023 flu season.

271. Mr. Heugel has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Nadine Iacco – Named Plaintiff 23**

272. Nadine Iacco (Named Plaintiff 23) is a Registered Nurse employed by Defendant MetroHealth.

273. Ms. Iacco submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

274. Ms. Iacco was subjected to extreme pressure from management to receive the COVID vaccine or face termination.  She was made to feel isolated by being excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

275. On February 7, 2022, MetroHealth informed Ms. Iacco that her request was denied, despite being told that her exemption request had "established basis for an exemption." She was told "reasonable accommodation" was not available to her, and that "MetroHealth would face undue hardship in granting" her exemption.

276. Ms. Iacco filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

277. Ms. Iacco has endured physical and emotional stress, anxiety, depression and fear caused by MetroHealth's callous disregard for her sincerely held religious belief.

278. She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials. She has been made to feel disposable by MetroHealth and is uneasy about her future because the March 15th about-face is only temporary and subject to change by MetroHealth.

279. Ms. Iacco has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Maxine Ish – Named Plaintiff 24**

280. Maxine Ish (Named Plaintiff 24) is a MRI Technologist employed by Defendant MetroHealth for 15 years.

281. Ms. Ish submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

282. Ms. Ish was subjected to extreme pressure from management to receive the COVID vaccine or face termination. She was made to feel isolated by being excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

283. As a result of the intense uncertainty created by MetroHealth, she and her husband had to put off planned renovations on their home. Her job is the primary source of income for her family and is the sole source of their healthcare coverage.

284. On February 7, 2022, MetroHealth informed Ms. Ish that her request was denied.

285. Ms. Ish filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

286. In March of 2022, she was told by her manager that she would not be on the schedule for work after March 24th. A notice was sent to everyone in her department publicly identifying who the vaccination 'holdouts' were, and that they would all be terminated effective March 24, 2022.

287. Ms. Ish endured extremely stressful working conditions for an extended period of time and feels that MetroHealth never respected her sincerely held religious belief. She is dismayed at how she was treated after fifteen years of faithful service.

288. She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.

289. Ms. Ish has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Nicole Kapelka – Named Plaintiff 25

290. Nicole Kapelka (Named Plaintiff 25) is a MRI Technologist employed by Defendant MetroHealth.

291. On August 31, 2021, Ms. Kapelka submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

292. Ms. Kapelka was subjected to extreme pressure to receive the COVID vaccine or face termination, creating intense anxiety that affected her mentally and physically.  She was made to feel isolated by being excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

293. On February 7, 2022, MetroHealth informed Ms. Kapelka that her request was denied.

294. On February 14, 2022, Ms. Kapelka filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

295. Despite being told she would be terminated March 24, 2022, she was required to pick up an extra shift on March 12th, due to staffing shortages.  The apparent arbitrary nature of MetroHealth's decisions created a great deal of stress for her.

296. After the threat of termination by MetroHealth, Ms. Kapelka had to seek urgent care treatment for severe migraines.  After another such incident on March 14, 2022, she was hospitalized for two days.

297. Ms. Kapelka has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Lisa Lastuka – Named Plaintiff 26**

298. Lisa Lastuka (Named Plaintiff 26) is a Registered Dietitian employed by Defendant MetroHealth for 24 years.

299. Ms. Lastuka submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

300. Ms. Lastuka invested a significant amount of time in attempted communications with MetroHealth, its Ethics and Compliance Department, and in seeking outside guidance throughout this process, robbing her and her family of time that could have been spent together.

301. She was made to feel isolated by being excluded from eating in break rooms with other employees, with no guidance for any alternative places she could eat, and from being excluded from participating in bonuses or incentives offered to vaccinated employees.

302. On February 7, 2022, MetroHealth informed Ms. Lastuka that her requests were denied, despite having previously been granted a Permanent Exemption from the flu vaccine.  When she asked Human Resources for a copy of her original exemption request from the flu vaccine, she was told it was no longer in her employee record.

303. Ms. Lastuka's medical records were also modified by MetroHealth after she informed Human Resources that a medical entry in her chart gave her until March 24, 2022, to receive her first dose of COVID vaccine, rather than have both doses completed by that date as stated in the February 7th communication.  This entry was then removed from her medical record.

304. On March 9, 2022, Ms. Lastuka filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

305. Ms. Lastuka is still fearful of losing her job as MetroHealth has indicated no exemptions are secure after the end of 2022.  MetroHealth has already reneged on that by requiring new submissions for this season's flu vaccine, along with threats of termination if those requests are denied, once again creating stress and uncertainty for Ms. Lastuka and her family.

306. Ms. Lastuka has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Diane Loska – Named Plaintiff 27**

307. Diane Loska (Named Plaintiff 27) is a Radiation Therapist Supervisor employed by Defendant MetroHealth.

308. On August 31, 2021, Ms. Loska's manager came to her office and asked if she was going to receive the COVID vaccine.  Ms. Loska informed him her religious stance had not changed and that she intended to request a religious exemption.  After informing him that there was nothing that would change her mind, her manager told her that he would be posting her position and wanted to know if she knew of anyone who might be interested in her job.  After he left, Ms. Loska informed her team of this but broke down in tears.  After going home, she cried all night and was sick the next day with a migraine.

309. The next day, Ms. Loska submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

310. It was the death of her infant son that propelled Ms. Loska into a career in healthcare, to commit her life to serving others during their time of need.

311. On December 6 and December 8, 2021, MetroHealth sent Ms. Loska an email requesting answers to questions about her religious belief and included a document with grossly false and misleading information about the use of fetal cell tissue in the development and production of common medications.  This communication can only be interpreted as an attempt to dissuade her from her sincerely held religious belief.  Rather than doing so, it only caused Ms. Loska to be fearful of violating her religious beliefs and she therefore stopped taking all medications.

312. Ms. Loska responded to both emails with extensive additional information, answering in detail each of the questions posed.

313. On February 7, 2022, MetroHealth informed Ms. Loska that her request was denied and that "[t]he information you provided did not establish basis for an exemption."  She was also told

"reasonable accommodation" was not available to her, and that "MetroHealth would face undue hardship in granting her exemption request."

314. On February 10, 2022, Ms. Loska filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

315. Ms. Loska has endured physical and emotional stress, anxiety, depression and fear caused by MetroHealth's callous disregard for her sincerely held religious belief.

316. Believing she was going to be terminated, she cashed out her retirement, incurring an upfront 20% tax penalty and an additional $700/month payment to cover her taxes for the year.

317. The way she has been treated by MetroHealth, which used threats, coercion, humiliation, and exclusion to intimidate people into getting vaccinated, has left Ms. Loska mentally, physically, and financially devastated.

318. She remains fearful of losing her employment because MetroHealth is starting the whole exemption request process again, requiring employees to resubmit and making threats about the outcome of denials.

319. Ms. Loska has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Yelena Manjhu – Named Plaintiff 28**

320. Yelena Manjhu (Named Plaintiff 28) is a Registered Nurse employed by Defendant MetroHealth.

321. In September 2021, Ms. Manjhu submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

322. Ms. Manjhu was subjected to extreme pressure to receive the COVID vaccine or face termination, creating intense anxiety that affected her mentally and physically.  She was made

to feel isolated by being excluded from areas and activities that unvaccinated patients and visitors were not excluded from.

323. The stress created by MetroHealth's actions caused Ms. Manjhu had to take a medical leave in October of 2021.  She felt bullied and helpless and experienced severe migraines aggravated by the stress created by her employer.

324. On December 6, 2021, she received communication from MetroHealth requesting her to answer additional questions about her sincerely held religious belief.  That communication also contained a document that was false and misleading.  Ms. Manjhu was led to believe by the words in that communication that if she did not provide the additional information sought, that her exemption request would be denied.

325. Believing that she was facing termination, Ms. Manjhu began to pick up as many extra and overtime shifts she could, in order to offset lost income after termination.  MetroHealth never objected to her working extra, nor did they indicate they could not make accommodations for her during this peak time, when COVID case counts were actually high.  She worked so much, she even missed spending the Holidays with her family.

326. On February 7, 2022, MetroHealth informed Ms. Manjhu that her request was denied, despite being told by MetroHealth that her request established a "basis for exemption."

327. On February 10, 2022, Ms. Manjhu filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

328. Ms. Manjhu was aware of healthcare workers in other hospital settings whose religious exemptions were approved within a week, yet MetroHealth strung its employees, students, and contractors along for months, before denying all religious exemption requests.

329. Ms. Manjhu is still fearful of losing her job as MetroHealth has indicated no exemptions are secure after the end of 2022.  MetroHealth has already reneged on that by requiring new submissions for this season's flu vaccine, along with threats of termination.

330. Ms. Manjhu has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Jana Martin-Ailoae – Named Plaintiff 29

331. Jana Martin-Ailoae (Named Plaintiff 29) is a Registered Nurse employed by Defendant MetroHealth, currently on an as needed basis.

332. Mrs. Martin-Ailoae submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

333. Instead of February 7, 2022, Mrs. Martin-Ailoae was notified by MetroHealth on February 11, 2022, that her request was denied.

334. Mrs. Martin-Ailoae filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

335. Because she was told that she would be terminated, Mrs. Martin-Ailoae took a position at another healthcare provider and reduced her employment at MetroHealth to PRN (as needed) status, losing over $4,000.00 in tuition reimbursement as a result of this decision she felt forced to make.

336. Mrs. Martin-Ailoae suffered severe anxiety and depression as a result of the constant and ever-increasing stress caused by MetroHealth's seemingly arbitrary deadlines (7 days, 45 days, etc.). She believes MetroHealth was just stringing employees along, thinking that the closer it got to any given deadline the more some employees would just cave in and get the vaccine.

337. MetroHealth created a work environment such that employees like Mrs. Martin-Ailoae were told that the unvaccinated didn't deserve care if they got sick.  Despite inquiring from Human

Resources as to whether MetroHealth would relax the isolation requirements of unvaccinated employees due to the Center for Disease Control's August 11, 2022, change in guidelines, Mrs. Martin-Ailoae was informed by Human Resources on August 22, 2022, stating that "MetroHealth's COVID-19 safety protocols for unvaccinated employees remain unchanged. As such, unvaccinated employees may not eat in congregate (group) environments such as the cafeteria, a populated break room, or with others even in small groups."  MetroHealth's punitive and retaliatory tactics against those who sought religious exemptions continue to this day, creating a toxic work environment.

338. Mrs. Martin-Ailoae is also fearful of losing her job after the end of the year, or at any time that MetroHealth chooses to change its policy again.

339. Mrs. Martin-Ailoae has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Charlotte McAllister – Named Plaintiff 30

340. Charlotte McAllister (Named Plaintiff 30) is a Registered Nurse Care Coordinator employed by Defendant MetroHealth.

341. Ms. McAllister submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

342. Ms. McAllister is extremely scared of being fired, as she is not in a position to lose her job or insurance.  The situation created by MetroHealth put her in a no-win situation, as she felt torn— she absolutely did not want to receive the vaccine, but she also couldn't afford to lose her job. She has described it as feeling violated, as if forced to do something against her will.

343. On February 7, 2022, Ms. McAllister was notified by MetroHealth that her request was indeed denied, despite having established a "basis for exemption."

344. On March 2, 2022, Ms. McAllister filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

345. As late as the morning of March 15, 2022, she was called into her manager's office and was told that if she was not fully vaccinated by March 23rd, she would be suspended for two weeks and then forced to 'voluntarily' resign.

346. Ms. McAllister has suffered anguish and stress as a result of the MetroHealth's arbitrary deadlines.  She has felt pressured and discriminated and is still not allowed to eat with co-workers or even participate in MetroHealth activities outside of work.

347. She remains fearful of losing everything she has worked so hard to achieve after the end of this year, or whenever MetroHealth decides to change its policy again.

348. Ms. McAllister has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Megan Mckinsey – Named Plaintiff 31

349. Megan Mckinsey (Named Plaintiff 31) is a Registered Nurse employed by Defendant MetroHealth.

350. Ms. Mckinsey submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

351. On February 7, 2022, Ms. Mckinsey was notified by MetroHealth that her request was denied.

352. On February 28, 2022, Ms. Mckinsey filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

353. Ms. Mckinsey has suffered emotional anxiety and stress as a result of the MetroHealth's arbitrary deadlines.  She has felt pressured and discriminated against by management as a result of her sincerely held religious belief, and at one time was told she would be 'walked out.'

354. She lives in a constant state of anxiety and remains fearful of losing her job after the end of this year, or whenever MetroHealth decides to change its policy again.  She has described MetroHealth's actions as games being played with employees' livelihoods on the line.

355. Ms. Mckinsey has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Edwardo Munoz – Named Plaintiff 32**

356. Edwardo Munoz (Named Plaintiff 32) is a Registered Nurse Care Coordinator employed by Defendant MetroHealth who worked remotely.

357. Mr. Munoz submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief.  He also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

358. On February 7, 2022, Mr. Munoz was notified by MetroHealth that his request was denied, despite his working remotely.

359. On February 19, 2022, Mr. Munoz filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying his valid religious exemption request.

360. Mr. Munoz has been subjected to stress, pressure, and fear as a result of MetroHealth's actions and omissions.

361. Mr. Munoz has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Amanda Panak – Named Plaintiff 33**

362. Amanda Panak (Named Plaintiff 33) is a Registered Diagnostic Medical Sonographer employed by Defendant MetroHealth.

363. On September 14, 2021, Ms. Panak submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted a similar request to be exempted from the influenza vaccine.  Despite multiple requests for the status of her exemption requests, she received no response that would give her any assurance she would not be terminated.

364. That same day, Ms. Panak was asked by her supervisor what her intentions were regarding the vaccine so that she could plan for her replacement, further proof that MetroHealth had no intention of ever granting religious exemption requests.

365. Ms. Panak believes MetroHealth purposely withheld providing and specific information as to when those who submitted exemption requests could be expected to receive an answer.

366. She felt her livelihood and that of her family was at risk if she did not consent to receiving the vaccination in violation of her sincerely held religious belief.

367. On November 24, 2021, MetroHealth sent Ms. Panak a Continuation Coverage Rights Under COBRA document, further convincing her that she was going to be terminated.

368. In December of 2021, Ms. Panak was asked by MetroHealth to provide additional information regarding her sincerely held religious belief and was also provided false and misleading information pertaining thereto by MetroHealth.

369. On February 7, 2022, Ms. Panak was notified by MetroHealth that her requests were denied, despite being told she had established a "basis for exemption" of her COVID vaccine exemption request.

370. Ms. Panak is also employed at another hospital.  She submitted the same exemption requests to that employer, and they were approved.

371. Ms. Panak filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

372. Ms. Panak's right to medical privacy was violated as MetroHealth shared her vaccination status with her supervisor and other members of management and physicians that worked in her area.

373. Ms. Panak has suffered terrible and debilitating anxiety and depression, leading to moments of crisis and the need for professional counseling assistance.  Despite repeated in-person coercive attempts to pressure her into being vaccinated, and even after Ms. Panak disclosed her sincerely held religious belief, the standard response was simply, "We'll miss working with you."

374. Ms. Panak describes the overall atmosphere that was created stems directly from the first video message from CEO Boutros in late August of 2021—that atmosphere being, 'You MUST do what we say, or we will fire you and you will not be able to get another job because of your vaccination status.'  Ms. Panak believes those with a sincere religious objection to vaccination were singled out, shamed, and ridiculed for their beliefs since the very beginning of this ordeal.

375. Ms. Panak is still experiencing retaliatory discrimination as others with less seniority than she are given higher positions of authority.

376. She lives in a constant state of anxiety and remains fearful of losing her job after the end of this year, or whenever MetroHealth decides to change its policy again.  She has described MetroHealth's actions as games being played with employees' livelihoods on the line.

377. Ms. Panak has suffered physical, emotional, and financial harm as a direct and proximate result of MetroHealth's actions and omissions and has been damaged in an amount to be determined at trial of this matter, for which MetroHealth is liable.

**Galina Paramushchuk – Named Plaintiff 34**

378. Galina Paramushchuk (Named Plaintiff 34) is a Registered Nurse employed by Defendant MetroHealth.

379. Ms. Paramushchuk submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

380. Her private health information was disclosed in front of other coworkers, in an apparent attempt to shame her into getting vaccinated.

381. On February 7, 2022, Ms. Paramushchuk was notified by MetroHealth that her request was denied.

382. On June 16, 2022, Ms. Paramushchuk filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

383. Ms. Paramushchuk has suffered emotional anxiety and stress as a result of the MetroHealth's arbitrary deadlines and other actions. She provides the healthcare insurance for her family, as well as paying off her school loans through public service loan forgiveness, all of which would be forfeited if she were to lose her job at MetroHealth.

384. She lives in a constant state of anxiety and remains fearful of losing her job whenever MetroHealth decides to change its policy again, particularly at the end of this year, 2022.

385. Ms. Paramushchuk has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Lisa Phillips LeBlanc – Named Plaintiff 35**

386. Lisa Phillips LeBlanc (Named Plaintiff 35) is a Registered Nurse Case Manager employed by Defendant MetroHealth.

387. Ms. LeBlanc submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

388. On February 7, 2022, Ms. LeBlanc was notified by MetroHealth that her request was denied, despite establishing a "basis for exemption."

389. Ms. LeBlanc has described her work environment as "ugly." She, and others, were cornered by managers asking what they are going to do regarding vaccination. She was required to train her coworkers how to run the unit that she had authority over in preparation for her termination.

390. She expressed a desire to apply for a PRN (as needed) position that had opened up in her department, only to be told by her manager in front of another coworker that she could not apply for that position because she was not vaccinated.

391. Ms. LeBlanc filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

392. Ms. LeBlanc has suffered emotional anxiety and stress as a result of the MetroHealth's arbitrary deadlines and other actions. She provides the healthcare insurance for her family, as well as paying off her school loans through public service loan forgiveness, all of which would be forfeited if she were to lose her job at MetroHealth.

393. She has experienced massive emotional distress and lives in a constant state of anxiety regarding the security of her employment. MetroHealth only just recently stated that any decision on exemptions to this season's flu vaccine would not be provided until after the deadline for vaccination.

394. According to Ms. LeBlanc, MetroHealth appears to be playing the same manipulative games, and continues to discriminate against those who submitted a religious exemption request.

395. Ms. LeBlanc has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Lisa Ramage – Named Plaintiff 36**

396. Lisa Ramage (Named Plaintiff 36) is a Center Director employed by Defendant MetroHealth.

397. Ms. Ramage submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted a similar request to be exempted from the influenza vaccine.

398. From August of 2021, when she expressed her intent to submit a request for religious exemption, she was treated very poorly by her supervisor, who subjected her to an unplanned "performance improvement plan."  She heard him express in meetings that anyone who refused the COVID-19 vaccine had no business working in healthcare, and that an unvaccinated employee should be denied healthcare treatment.

399. On February 7, 2022, Ms. Ramage was notified by MetroHealth that her requests were denied.

400. These discriminatory tactics created so much stress for Ms. Ramage that she sought counseling assistance to cope.

401. In March of 2022, Ms. Ramage filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

402. Ms. Ramage has suffered emotional anxiety and stress as a result of the MetroHealth's arbitrary deadlines and refusal to acknowledge the validity of her sincerely held religious belief.

403. She remains fearful that she will again be threatened with termination.  In preparing a new request for exemption to this season's flu vaccine, Ms. Ramage began experience symptoms of post traumatic stress disorder.  She feels judged not by her work performance but because of her religious faith.

404. Ms. Ramage has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Darlene Rutledge – Named Plaintiff 37

405. Darlene Rutledge (Named Plaintiff 37) is a Registered Nurse employed by Defendant MetroHealth for nine years.

406. Ms. Rutledge submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted a similar request to be exempted from the influenza vaccine.

407. On February 7, 2022, Ms. Rutledge was notified by MetroHealth that her requests were denied, stating that she did not "establish basis" for exemption from the flu vaccine but did establish basis for exemption from the COVID vaccine.

408. On February 9, 2022, Ms. Rutledge filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

409. During most of the relevant time, Ms. Rutledge was pregnant with her first child.  The constant stress created by MetroHealth's only increased the risk to her and her child.

410. She wished to spend enough time at MetroHealth to retire, but now does not even know if she will have a job next year.  MetroHealth has once again begun with its everchanging deadlines and threats of termination for those seeking exemption to this season's flu vaccine.

411. Ms. Rutledge has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Lori Sawchik – Named Plaintiff 38

412. Lori Sawchik (Named Plaintiff 38) is a Care Navigator employed by Defendant MetroHealth.

413. Ms. Sawchik submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

414. On February 7, 2022, Ms. Sawchik was notified by MetroHealth that her request was denied.

415. On February 18, 2022, Ms. Sawchik filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

416. Ms. Sawchik suffered severe anxiety caused by constant pressure from MetroHealth to be vaccinated or lose her job, benefits, and retirement.  On three separate occasions, she actually scheduled a time to be vaccinated, but could not bring herself to violate her sincerely held religious belief.

417. Ms. Sawchik is once again experiencing anxiety as MetroHealth had only stated that religious exemptions to the COVID vaccine would be honored through the end of the year, 2022.

418. Ms. Sawchik has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Kerry Ann Stouges – Named Plaintiff 39

419. Kerry Ann Stouges (Named Plaintiff 39) is a Registered Nurse employed by Defendant MetroHealth for 20 years.

420. From beginning of the COVID outbreak, Ms. Stouges was one of the first nurses to volunteer to set up and staff the COVID unit at MetroHealth.  She worked with sickest patients, many of whom were aged and from nursing homes.  She was exposed to COVID a countless number of times.

421. Ms. Stouges submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also provided additional information on her religious belief after being requested to do so by MetroHealth.

422. On February 7, 2022, Ms. Stouges was notified by MetroHealth that her request was denied.

423. On February 15, 2022, she was called into her manager's office and asked what her plans were regarding the vaccine.  She explained receiving it would be a violation of her sincerely held religious belief and was then told by her manger that her last day would be March 24, 2022.

424. On February 24, 2022, Ms. Stouges filed a charge with the Ohio Civil Rights Commission, pertaining to MetroHealth's discriminatory conduct in denying her valid religious exemption request.

425. Ms. Stouges and her family have been subjected to severe emotional, psychological, and physical stress.  Ms. Stouges has four young children, and her family depends on her income. Having the threat of termination constantly hanging over her head is very stressful, and now it appears those threats will continue.

426. No permanent resolution has been reached regarding her exemption request, and Ms. Stouges is still subject to much of the same discriminatory restrictions as before.  While she can work around her coworkers, she can't be with them in the cafeteria or elsewhere.  Further, MetroHealth allows two visitors per patient, with no inquiry into their vaccination status.

427. Ms. Stouges has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Jennifer Talkington – Named Plaintiff 40**

428. Jennifer Talkington (Named Plaintiff 40) is a Trauma Data Specialist employed by Defendant MetroHealth.

429. Prior to COVID, Ms. Talkington was already established as a remote worker, splitting her time in her office at a satellite facility and working from home.  For a period of several months during COVID, she worked successfully exclusively from home.

430. Ms. Talkington submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted a similar request to be exempted from the influenza vaccine.

431. On February 7, 2022, Ms. Talkington was notified by MetroHealth that her requests were denied.

432. Ms. Talkington filed a charge with the Ohio Civil Rights Commission for MetroHealth's discriminatory conduct in denying her valid religious exemption request.

433. Ms. Talkington was subjected to a great deal of emotional stress by MetroHealth holding termination over her head while taking five months to give her a decision on her exemption requests, and MetroHealth is continuing to subject her to discriminatory restrictions.

434. Ms. Talkington was given no assurance that her exemption request was approved, rather only that she was permitted to work through the end of the year 2022; unless, of course, MetroHealth changes its position once again.

435. Ms. Talkington has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Joy Marie Wagner – Named Plaintiff 41**

436. Joy Marie Wagner (Named Plaintiff 41) is an Emergency Room Paramedic employed by Defendant MetroHealth.

437. Ms. Wagner submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

438. On February 24, 2022, Ms. Wagner was notified by MetroHealth that her request was denied.

439. On March 1, 2022, Ms. Wagner filed a charge with the Ohio Civil Rights Commission for MetroHealth's discriminatory conduct in denying her valid religious exemption request.

440. Ms. Wagner was subjected to constant daily harassment from management and other staff members about how she was being selfish and was killing people for not wanting to receive the vaccine.  Others merely murmured "tick, tock" as they passed her.

441. The callous and discrminatory work environment was so severe that after her father's death, she even had to endure rumors at work that he died because Ms. Wagner was not vaccinated.  Rather than an empathetic and caring environment, MetroHealth provided a toxic workplace.

442. She desired to have counseling to help cope with the stress but felt she could no longer trust MetroHealth's Employee Assistance Program due to the systemic discrimination.

443. Ms. Wagner has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Kristine Wagner – Named Plaintiff 42**

444. Kristine Wagner (Named Plaintiff 42) is a Registered Nurse Patient Care Coordinator employed by Defendant MetroHealth for over 30 years.

445. Ms. Wagner submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

446. On February 7, 2022, Ms. Wagner was notified by MetroHealth that her request was denied.

447. On February 14, 2022, Ms. Wagner and another coworker received a text message from her manager saying she would be taken off the work schedule after March 23, 2022.  Ms. Wagner responded that she had no intention of losing her job or resigning, and that she has not received any formal notice of termination, and that therefore her manager should keep her on the schedule.

448. On March 1, 2022, Ms. Wagner filed a charge with the Ohio Civil Rights Commission for MetroHealth's discriminatory conduct in denying her valid religious exemption request.

449. Ms. Wagner was subjected to pressure and discrimination and was constantly being threatened with termination.  Members of management would also discuss private health information in front of other coworkers.  The constant stress caused Ms. Wagner emotional distress, and negatively impacted her relationships with coworkers, friends, and even family.  She lost sleep and suffered headaches.  The work environment became so toxic that Ms. Wagner began to look for other employment.  This toxic environment was systemic and fostered by MetroHealth's policies favoring vaccinated employees and placing severe restrictions upon those who had sought a religious exemption request.  That same toxicity was not necessarily demonstrated against those who had received a medical exemption.

450. Ms. Wagner describes her work environment as the most despicable and discriminatory environment she has ever experienced in her thirty years at MetroHealth, or anywhere.  She bared her soul to her employer in seeking an exemption based upon her sincerely held religious belief, only to be strung along, lied to, and ultimately rejected.

451. Ms. Wagner has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

**Mindy Webb – Named Plaintiff 43**

452. Mindy Webb (Named Plaintiff 43) is a Registered Nurse employed by Defendant MetroHealth for 15 years.

453. Ms. Webb submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.  She also submitted a similar request to be exempt from MetroHealth's influenza vaccination requirement.

454. On February 7, 2022, Ms. Webb was notified by MetroHealth that her requests were denied, despite being told her request for exemption from the COVID vaccine had established a "basis for exemption."

455. On February 9, 2022, Ms. Webb filed a charge with the Ohio Civil Rights Commission for MetroHealth's discriminatory conduct in denying her valid religious exemption request.

456. Ms. Webb suffered severe mental and physical anguish as a result of MetroHealth's actions and ommissions, leading to debilitating migraines.  For months and months they drug out their decision making, and kept changing the date to 'comply or be terminated.'

457. Despite MetroHealth stating they follow CDC guidance, they appear to pick and choose what guidelines to follow.  Despite CDC guidelines to the contrary, MetroHealth still prevents unvaccinated staff from eating in breakrooms, the cafeteria, or with any of their coworkers. Ms. Webb still feels discriminated against, and unfortunately will have to start this fight all over again for the 2022-2023 flu season.

458. Despite MetroHealth stating they are inclusive and diverse, Ms. Webb, and others like her, who had requested religious exemptions to vaccine requirements, were not accepted or included.  In the past, if someone did not want the flu vaccine, they simply were asked to wear a mask.  Not so now.  MetroHealth was not accepting of Ms. Webb's religious beliefs when they refused to make any accommodations; and even now, still place illogical, punitive, and retaliatory restrictions on her.

459. Ms. Webb has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Steven Witalis – Named Plaintiff 44

460. Steven Witalis (Named Plaintiff 44) is a Registered Nurse employed by Defendant MetroHealth.

461. Mr. Witalis submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief.

462. On February 7, 2022, Mr. Witalis was notified by MetroHealth that his request was denied, despite being told his request had established a "basis for exemption."

463. On July 29, 2022, Mr. Witalis filed a charge with the Ohio Civil Rights Commission for MetroHealth's discriminatory conduct in denying her valid religious exemption request.

464. Mr. Witalis was subjected to jokes and threats that perhaps a doctor will just "accidentally" bump into him with vaccine syringe. He was treated in a condescending manner from staff and department heads.

465. Instead of following a normal progressive disciplinary process, managers were advised to immediately report any infraction of the restrictions placed upon Mr. Witalis.

466. Mr. Witalis was unable to sleep for several days as a result of the stress created by MetroHealth's actions and omissions and in a sleep deprived daze, he fell down his basement steps.

467. Mr. Witalis has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Elizabeth Wolfe – Named Plaintiff 45

468. Elizabeth Wolfe (Named Plaintiff 45) is a Registered Nurse employed by Defendant MetroHealth.

469. Ms. Wolfe submitted an exemption request to the MetroHealth vaccine mandate based upon her sincerely held religious belief.

470. On February 7, 2022, Ms. Wolfe was notified by MetroHealth that her request was denied, despite being told her request had established a "basis for exemption."

471. On March 11, 2022, Ms. Wolfe filed a charge with the Ohio Civil Rights Commission for MetroHealth's discriminatory conduct in denying her valid religious exemption request.

472. Ms. Wolfe suffered severe emotional distress and torment at having to choose between her religious beliefs and financial survival, as her job at MetroHealth is her sole source of income.

473. Ms. Wolfe has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### Patrick Julius – Named Plaintiff 46

474. Patrick Julius (Named Plaintiff 46) is a RN Flight Nurse currently employed by Defendant MetroHealth.

475. Mr. Julius submitted an exemption request to the MetroHealth vaccine mandate based upon his sincerely held religious belief, along with answering follow-up questions posed by his employer.

476. Despite being told that he established a "basis for exemption," his request was denied because MetroHealth claimed it would face undue hardship in granting his exemption request, and further, that no accommodations were available to him.

477. Mr. Julius and his wife were expecting a child and he was subject to constant stress and pressure being under threat of termination, for fear of losing healthcare benefits.

478. Mr. Julius was also subject to public shaming by not being allowed a NM sticker and was excluded from opportunities provided to vaccinated employees.

479. He also incurred medical harm as a result MetroHealth's acts and ommissions.

480. Mr. Julius has been damaged in an amount to be determined at trial as a direct and proximate result of MetroHealth's actions and omissions, for which MetroHealth is liable.

### ADDITIONAL RELEVANT FACTS

481. Despite having submitted a religious exemption request, four of the above-named Plaintiffs felt they had no other choice but to receive to the first dose of the SARS-CoV-2 vaccine, and

did so only under extreme and intense pressure created by the constant threat of termination, loss of income, and loss of healthcare coverage for themselves or their loved ones.

482. They did so in order to meet the deadlines imposed by MetroHealth and keep their jobs, truly believing they would be terminated if they did not do so.  One such Plaintiff emphatically stated prior to and during the time of vaccination that he or she was doing so only under duress.

483. After dealing with the overwhelming guilt of conscience and deep regret for violating their sincerely held religious beliefs, they then had to face the fact that MetroHealth did an about-face and approved all exemption requests, making their painful sacrifice entirely unnecessary.

484. These four experienced perhaps the harshest outcome of MetroHealth's callous disregard for the sincerely held religious beliefs of MetroHealth's employees, students, and contractors.

485. The financial motivation, the outright mockery, the toying with people's and their families' livelihoods and emotions, does not square with what is stated on the MetroHealth website:



(Available at:  https://www.metrohealth.org/about-us/inclusion-and-diversity)

486.  Instead, MetroHealth has been, and is still currently, engaged in a purposeful plan to purge itself of those employees with sincerely held religious beliefs that prevent them from vaccination.

487.  As recently as a few days ago, on November 14, 2022, MetroHealth sent out COBRA notices to several unvaccinated employees that has previously submitted religious exemption requests.

488.  Of significance, MetroHealth's March 15th about-face is about to expire the end of this year, subjecting employees to the same stressors.  Moreover, MetroHealth has already reneged on their statement that exemptions would be honored through the end of 2022 by requiring new exemption submissions by November 9, 2022, for the influenza vaccine.

489.  The above delineated retaliatory tactics by MetroHealth are widespread and likely to continue unabated unless injunctive relief is granted.

## CLASS ALLEGATIONS.

490.  Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a) and (b).

491.  Through this action, Plaintiffs seek to represent a class of all MetroHealth employees, students, and contractors who have requested or will request religious exemptions and accommodations from mandatory vaccination requirements and who have had those requests unlawfully denied (expressly or constructively).

492.  The class is so numerous that joinder of all members is impractical.  While the exact class size is unknown to Plaintiffs, public reports indicate that MetroHealth has as many as 8,000 employees.  The precise number and identification of the class members will be ascertainable from MetroHealth's records during discovery.

493.  There are questions of law and fact common to all members of the class.  Those common questions include, but are not limited to, the following:

a.      Did MetroHealth comply with federal and state law when it indiscriminately denied religious exemption and accommodation requests *en masse*?

b.      Did MetroHealth comply with federal and state law when it informed the Plaintiffs that their exemptions would be an "undue hardship" on MetroHealth for them to keep their current positions, irrespective of any alternative safety measures that Plaintiffs are willing to undertake, and that other healthcare employers in Ohio and throughout the country allow their employees to undertake?

c.      Did MetroHealth violate federal and state law when it granted medical exemption requests and provided reasonable accommodations, even while denying Plaintiffs' similar requests?

d.      Did MetroHealth comply with its obligations under federal law to engage in the interactive process when responding to each exemption request?

e.      Did MetroHealth violate federal and state law when it provided Plaintiffs with false and misleading documentation regarding the link between other medications and abortion?

f.      Did MetroHealth provide an adequate mechanism for requesting and obtaining a religious exemption when it provided Plaintiffs no opportunity to appeal?

g.      Did MetroHealth violate federal and state law when it failed to provide a decision to its employees appeals within the timeframe to which MetroHealth committed; when it pressured its employees to accept vaccination against their religious beliefs by posting their jobs and recruiting their replacements; and when it removed employees from the work schedule?

494. Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested exemptions and accommodations from mandatory vaccination policies and MetroHealth denied those requests.

495. For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

496. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

## COUNT I – Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

497. Plaintiffs hereby reallege and adopt each and every allegation of the preceding paragraphs as if fully set forth herein.

498. Title VII of the Civil Rights Act of 1964 prohibits MetroHealth from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e- 2(a).

499. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 or flu vaccine.

500. Plaintiffs informed MetroHealth of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

501. MetroHealth has failed to engage in the interactive process with Plaintiffs regarding their religious accommodation requests.

502. Irrespective of the interactive process, MetroHealth failed to provide Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiffs because of their religious beliefs.

503. MetroHealth's failure to provide religious exemptions and accommodations has harmed and will continue to harm the Plaintiffs.

504. By failing to engage in the interactive process or offer any reasonable accommodation, MetroHealth's discriminatory actions were intentional and/or reckless and in violation of Title VII.

505.  Plaintiffs have filed and/or are filing charges with the Ohio Civil Rights Commission and/or EEOC complaining of these discriminatory actions and have received their Notice of Right to Sue.

506. Plaintiffs respectfully pray for relief against MetroHealth as set forth in their Prayer for Relief.

## COUNT II - Violation of the Free Exercise Clause of the
## First Amendment to the United States Constitution (28 U.S.C. § 2201, et seq.)

507.  Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

508.  The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the federal government from abridging plaintiff's rights to free exercise of religion.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits states from abridging plaintiffs' rights to free exercise of religion.

509.  Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination

510.  As shown above, Defendant MetroHealth is a governmental actor.   Defendant's actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted and enforced under color of state law.

511.  Defendant's actions impermissibly burden Plaintiffs' sincerely held religious beliefs, compel them to abandon their beliefs or violate them under coercion, and force Plaintiffs to choose between their religious convictions and their continued employment.

512.  Defendant's actions effectively strips Plaintiffs of their right to religious exemption by subjecting them to unduly harsh and punitive measures, while affording others granted medical exemptions genuine accommodation and allowing them to retain their positions.

513.  Defendant's actions place Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

514.  Defendant's actions put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their employment, professional standing, reputation, and the ability to support themselves and their families.

515. Defendant's interpretation and application of the vaccine mandate is neither neutral nor generally applicable as it allows medical exemptions for some but denies religious exemptios to others.

516. Defendant's actions thus target Plaintiffs' religious beliefs for disparate and discriminatory treatment.

517. There is no legitimate, or compelling interest in Defendant's denial of an exemption and accommodations for Plaintiff's sincerely held religious beliefs, while granting medical exemptions to others.

518. Defendant's actions in denying genuine accommodations to Plaintiffs are not the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by the same protective measures (masking, testing, quarantining, etc.) already being required of those for whom medical exemptions have been granted by Defendant.

519. Defendant's actions have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

520. Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs and therefore require injunctive relief to protect their right to free exercise of religion.

## COUNT III - Violation of Ohio Constitution, Article 1 Section 1
### (28 U.S.C. § 2201, et seq.)

521. Plaintiffs restate the foregoing paragraphs as if fully restated herein.

522. Plaintiffs have a fundamental right under Article I, Section 1, of the Ohio Constitution to refuse medical treatment to protect the liberties of personal security, bodily integrity and autonomy.

*Steele v. Hamilton Cty. Community Mental Health Bd.,* 90 Ohio St. 3d 176, 180-181 (2000).

523. "The liberty interests infringed upon when a person is medicated against his or her wishes is significant… This type of intrusion clearly compromises one's liberty interests in personal security, bodily integrity and autonomy." *Id*. at 182.

524. "The right to refuse medication is not absolute and it must yield when outweighed by a compelling government interest." *Id*. at 181.

525. "Whether the potential benefits [of medication] are worth the risks is a personal decision that, in the absence of a compelling state interest, should be free from government intrusion." *Id*. at 183.

526. A state may have a compelling interest to override an individual's decision to refuse medication to prevent harm to that individual or others. *Id*. at 183.

527. The state's right to invoke its police power to override an individual's decision to refuse medication arises only when there is an imminent danger of harm. *Id*. at 184.

528. Any such forced medication must be medically appropriate for the individual and it must be the least intrusive means of accomplishing the state's interest of preventing harm. *Id.* at 184.

529. The state must establish its compelling interest to override the individual decision to refuse medication by clear and convincing evidence. *Id.* at 180.

530. The vaccination mandate's requirement to show proof of vaccination, unless exempted, requires a medical treatment, which plaintiff has a right to refuse under Article I, Section 1 of the Ohio Constitution.

531. Not only is Defendant precluded from violating Plaintiffs' right to refuse medical treatment without a compelling interest, "the unconstitutional-conditions doctrine bars a State from

achieving the same goal indirectly." *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d

908,914 (6th Cir. 2019).     This "principle 'forbids burdening [constitutional] rights by

coercively withholding benefits from those who exercise them." *Id*. at 911.

532.  Defendant is unable to show the elements necessary to establish a compelling interest

overriding Plaintiffs' right to refuse medical treatment as described above.

533.  The COVID-19 vaccines are not medically appropriate for Plaintiffs because the risks

outweigh the benefits.   The COVID-19 vaccine has a limited period of efficacy either because

of the waning effects of the vaccine or the nature of COVID-19 variants.  Extended protection

would require the use of booster shots, with uncertain attendant risks of adverse effects.   The

adverse events reported to the federal Vaccine Adverse Event Reporting System ("VAERS")

through July 16, 2021, show at least a 39-fold increase in annualized vaccine deaths reported

to VAERS.

534.  The COVID-19 vaccines are not the least intrusive means of preventing harm because the

treatment of the COVID-19 infection has improved tremendously, and those particularly

vulnerable to COVID-19 have other means available to protect themselves.

### COUNT IV - Violation of Ohio Constitution, Article 1 Section 7
### (28 U.S.C. § 2201, et seq.)

535.  The Ohio Constitution states in Article 1, Section 7, states that "All men have a natural and

indefeasible right to worship Almighty God according to the dictates of their own conscience

. . . nor shall any interference with the rights of conscience be permitted."

536.  Defendant's vaccine mandates, without exception and reasonable accommodation for sincerely

held religious beliefs, interferes with and violates Plaintiffs' indefeasible right to God

according to the dictates of their own conscience.

## COUNT V - Right to Free Exercise of Religion
## (First Amendment; 42 U.S.C. § 1983)

537.  Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

538.  By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendant deprived Plaintiffs of their fundamental constitutional right to the free exercise of religion, all in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

539.  Defendant's policies, practices, customs, and procedures, punish and impose discipline on Plaintiffs for alleged violations of Defendant's new policies, simply for exercising their right to the free exercise of religion.   Defendant's actions injure Plaintiffs by violating their constitutional rights through threat of discipline, sanction, and termination by Defendant for failure to comply with Defendant's policies.

540.  As a direct and proximate result of Defendant's violation of the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to injunctive relief.

## COUNT VI - Violation of O.R.C. 4112, et seq

541.  Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

542.  Plaintiffs hold sincere religious beliefs that precludes them from receiving an influenza or COVID-19 vaccine.

543.  Plaintiffs informed Defendant of those beliefs and requested religious exemption and accommodations from the vaccine mandate.

544.  Defendant failed to engage in an interactive process with Plaintiffs regarding religious

accommodation requests and instead only responded with denials of accommodations.

545. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with reasonable accommodations for their religious beliefs.

546. Defendant thereby discriminated against the Plaintiffs because of their religious beliefs.

547. Defendant's failure to provide religious accommodations has harmed and will continue to harm the Plaintiffs.

548. By failing to engage in the interactive process or offer any reasonable accommodation, defendants' discriminatory actions were intentional and/or reckless and in violation of O.R.C. 4112, et seq.

549. Plaintiffs engaged in protected activity when they requested religious accommodations from Defendant's vaccine requirements.

550. Defendant responded by denying their requests and announcing that it would terminate their employment.  This was so even though Defendant conceded many of the requests for religious exemptions established a sufficient basis for exemption.

551. Defendant responded to Plaintiffs' protected activity by giving them the false choice between vaccination and termination.

552. Plaintiffs' religious beliefs and protected activity were the causes of Defendant's adverse action.  Defendant's treatment of religious accommodation requests confirms Defendant's hostility to Plaintiffs' requests for religious accommodation.

553. By retaliating against Plaintiffs for engaging in protected activity, Defendant violated O.R.C. 4112, et seq.   This violation harmed and continues to harm the Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.      That the Court certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

B.      That the Court issue a permanent injunction restraining and enjoining MetroHealth, all its officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the mandatory vaccination policies or any other written or unwritten policy or practice denying Plaintiffs their right to accept or refuse administration of the vaccines, or subjecting Plaintiffs to discrimination for the exercise of their sincerely held religious beliefs against administration of the vaccines in violation of the U.S. Constitution, the Ohio Constitution, Ohio R.C. Chapter 4112, or Title VII.

C.      That this Court award Plaintiffs and those similarly situated actual damages in an amount to be proven at trial, punitive damages, and damages including those for pain and suffering that Plaintiffs sustained as a result of MetroHealth's discriminatory, unconscionable, and unlawful actions and ommisions.

F.      That this Court retain jurisdiction over the matter for the purposes of enforcing judgment or any Court order in this matter.

H.      That this Court award Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Ohio R.C. 4112 and Title VII.

I.      That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Signed:     /s/ Jon A. Troyer
                     Jon A. Troyer, #0080888
                     Richard W. Arnold, #0063367
                     ARNOLD & ASSOCIATES, LTD.
                     4580 Stephen Circle NW, Suite 100
                     Canton, Ohio  44718
                     Phone:  (330) 563-4149
                     Fax:  (330) 526-6511
                     Email: jtroyer@asalawfirm.com

                     *Attorney for Plaintiffs*