UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| FRANK SAVEL, et al., : | CASE NO. 1:22-cv-02154 |
|   Plaintiffs, : | ORDER |
| : | [Resolving Doc. 46] |
| v. : |  |
| METROHEALTH SYSTEM, : |  |
|   Defendant. : |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Frank Savel moves under Federal Rule of Civil Procedure 45(d)(3)(A)(iii)[1] to quash subpoenas issued by Defendant The MetroHealth System (MetroHealth) to former Plaintiffs Isaac Allison, Darlene Rutledge, and Kerry Stouges.[2] Defendant MetroHealth opposes.

For the following reasons, the Court **DENIES** Plaintiff Savel's motion to quash Defendant MetroHealth's subpoena of former Plaintiffs Allison, Rutledge, and Stouges.

## I.  BACKGROUND

At Plaintiff Savel's May 29, 2024 deposition, Savel testified that he learned of a potential lawsuit against MetroHealth through membership in a Telegram Messenger (Telegram) group message with other MetroHealth employees.[3] Afterwards, Defendant MetroHealth sought production of the Telegram group message as a document responsive

---

[1] Fed. R. Civ. P. 45(d)(3)(A)(iii).
[2] Doc. 46. Previously, the Court granted Defendant MetroHealth's motion to dismiss Plaintiffs Isaac Allison, Darlene Rutledge, and Kerry Stouges, and other named Plaintiffs. Doc. 23. The Sixth Circuit upheld the Court's dismissal of all Plaintiffs save Plaintiff Savel and former Plaintiff Crockett. *Savel v. MetroHealth*, 96 F.4th 932, 944-45 (6th Cir. 2024).
[3] Doc. 48-1, PageID #: 1203-1204. Telegram is a "cloud-based, cross-platform, online instant messaging application that allows users to exchange messages, share media and files, and hold private and group voice or video calls." Doc. 46, PageID #: 1163.

Case No. 1:22-cv-02154
GWIN, J.

to its discovery requests.[4] After several follow-ups with Plaintiff Savel's counsel, Defendant MetroHealth issued records subpoenas to individuals that Savel mentioned that he communicated with via Telegram.[5]

With their subpoenas, Defendant MetroHealth seek all Telegram communications "related to MetroHealth's COVID-19 vaccination program and/or exemption requests related to the same," and "[a]ny communications you had with Frank Savel and/or Danielle Crockett regarding MetroHealth's COVID-19 vaccination program and/or exemption requests related to the same."[6]

Plaintiff Savel moves to quash Defendant MetroHealth's subpoenas. He argues that the contents of a specific Telegram message group are shielded from production by the common interest exception to the third-party disclosure rule.[7] This private, invitation-only Telegram group was created by MetroHealth employees to discuss legal options regarding MetroHealth's vaccine mandates. Savel says that "[a]t all times, the participants in the Telegram group shared a common legal interest pertaining to the mandates and the proper responses thereto."[8]

Defendant MetroHealth opposes the motion to quash.[9]

On July 11, 2024, the Court conducted a status conference, where it discussed the subpoena of the Telegram group. It ordered Plaintiff Savel to file the Telegram communications under seal for in camera review.[10]

---

[4] Doc. 48-3, PageID #: 1217-18.
[5] Docs. 48-4, 48-5, 48-6.
[6] Doc. 46, PageID #: 1163.
[7] *Id.* at PageID #: 1164.
[8] *Id.*
[9] Doc 48.
[10] *See* Docket, July 11, 2024.

Case No. 1:22-cv-02154
GWIN, J.

Now having carefully reviewed the Telegram messages, the Court proceeds to a discussion of Plaintiff Savel's motion to quash.

## II. LEGAL STANDARD

Rule 26 provides that parties may obtain discovery regarding, "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[11] While relevancy is broad, "district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce."[12]

Rule 45 permits a party to issue a subpoena commanding a non-party to produce documents.[13] A district court must quash a subpoena that "requires disclosure of privilege or other protected matter[s] . . . or subjects a person to undue burden."[14] The movant seeking to quash the subpoena bears the burden of persuasion.[15]

Plaintiff Savel argues that his motion to quash should be granted because the subpoena seeks communications that falls within the common interest exception to waiver of attorney-client privilege due to third-party disclosure.[16]

Under the attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is

---

[11] Fed. R. Civ. P. 26(b)(1).
[12] *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).
[13] *See* Fed. R. Civ. P. 45(a)(1)(D).
[14] Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).
[15] *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (citing *Hopp v. Arthur J. Gallagher & Co.*, No. 1:18-cv-507, 2019 WL 109368, *2 (N.D. Ohio. Jan. 4, 2019)).
[16] *See* Doc. 46, PageID #: 1164-65.

- 3 -

Case No. 1:22-cv-02154
GWIN, J.

waived."[17]  "Voluntary disclosure of communications made with one's attorney to a third party generally waives the attorney-client privilege."[18]  Courts have held that a client waives attorney-client privilege when the client communicates in circumstances where the client could not reasonably believe the communications were confidential.[19]

The common interest doctrine is an exception to this general rule that voluntary disclosure of communications made with one's attorney to a third party waives the attorney-client privilege.  The common interest doctrine expands coverage of the attorney-client privilege "to include situations in which two or more clients with a common interest in a matter agree to exchange information regarding the matter."[20]

The parties must "have the same goal in litigation," but they need not be parties to the same litigation.[21]  "Additionally, it is not necessary that parties be in agreement on every point; a communication is privileged so long as it does it deals with a matter on which parties have agreed to work toward a mutually beneficial goal, even if parties are in conflict on some points."[22]

"Thus, the common interest doctrine protects documents and communications from discovery if two conditions are satisfied: (1) the documents or communications were shared

---

[17] *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).  The parties have not briefed whether state or federal privilege law applies under Rule 501 in a case involving state and federal claims.  However, "[t]here is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege."  *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-cv-708, 2021 WL 4891307, at *7 (S.D. Ohio Oct. 20, 2021) (citing *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079-80 (Ohio Ct. App. 2012)).  And both Ohio and federal law recognize the common interest and joint representation doctrines.  *See Voith Hydro, Inc.*, 2021 WL 4891307, at *7-8.  The doctrines' boundaries may vary slightly under Ohio versus federal law.  *See id.* (Ohio common interest recognizes a "common legal strategy" whereas federal common interest doctrine requires "identical legal interest").  However, for the purposes of the Court's analysis here, the result is the same under each privilege law: any privilege has been waived by the presence of uninterested third parties in the Telegram group.
[18] *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (quoting *Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999)).
[19] *Pontikos v. Am. Med. Tech.*, No. 1:20-cv-02163, 2021 WL 634999, at *2 (N.D. Ohio. Feb. 18, 2021) (gathering cases).
[20] *Cooey*, 269 F.R.D. at 652 (citing *Reed*, 134 F.3d at 357).
[21] *Id.* (citing *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04-cv-2347, 2006 WL 314435, at *6 (N.D. Ohio Feb. 9, 2006), *rev'd in part on other grounds*, 258 F. App'x 318 (Fed. Cir. 2007)).
[22] *Id.* (citing 2-501 Fed. R. Evid. Manual 501.02(5)(e)(ii)).

Case No. 1:22-cv-02154
GWIN, J.

between parties with a common legal interest . . . and (2) the documents or communications are protected by the attorney-client privilege and/or work product doctrine."[23]

### III. DISCUSSION

Plaintiff Savel has not shown either that the Telegram group message members all share a common legal interest, or that the Telegram message thread is protected by the attorney-client privilege. So, Savel has not met his burden to quash Defendant MetroHealth's subpoena.

Certain MetroHealth employees started the Telegram message thread on September 1, 2021, in response to Defendant MetroHealth's vaccine policies.[24] Over a hundred more individuals were added over the next two years. As of December 19, 2021, the Telegram group had over one hundred members.[25]

Dozens of those members appear in the Telegram group transcript as "Deleted Account." From the Court's in camera review, there is no way of verifying many of these anonymous group members' identities or confirming if they had a common interest with Plaintiff Savel. Plaintiff Savel likewise does not explain how every anonymous member has "agreed to work toward a mutually beneficial goal."[26]

In fact, on July 14, 2023, after a period of diminished activity, a member mentions there are "spies in th[e] group" as a reason why they no longer can discuss litigations strategy using that forum.[27] This directly contradicts Plaintiff Savel's assertion that all members share a common legal interest. Without any way of knowing the "spies'" identities or when they

---

[23] *Gerace v. Cleveland Clinic Found.*, No. 113231, 2024 WL 3451837, at *4 (Ohio Ct. App. July 18, 2024).
[24] Doc. 50, PageID #: 1248.
[25] *Id.* at PageID #: 2248.
[26] *Cooey*, 269 F.R.D. at 652
[27] Doc. 50, PageID #: 3479.

- 5 -

Case No. 1:22-cv-02154
GWIN, J.

joined, the Court must assume that at least one individual lacked a common interest from the group's outset.

By the same reasoning, the Telegram group has waived any attorney-client privilege.

From the group's September 1, 2021 inception, many Telegram group members focused on legal action. Throughout, members discuss various legal strategies and float the names of potential lawyers—some of whom they pass on advice from.

At the beginning of February 2022, Telegram group members contact current Plaintiff's counsel, Jon Troyer, for a free consultation and advice on filing Ohio Civil Rights Commission (OCRC) complaints. At the same time, members mention that "we aren't signed to a lawyer yet."[28] At times, members suggest making a separate Telegram group for those interested in filing a lawsuit.

On March 1, 2022, group members disperse information on how to retain Troyer for participation in an injunctive filing.[29] Sixty-three group members indicate they wish to participate.[30] Members mention that they are not involved, but are willing to financially assist with the lawsuit.[31] Soon after, Defendant MetroHealth agrees to accommodate religious exemptions, so Troyer "no longer represents '[the Telegram group members]' as a group."[32]

---

[28] *Id.* at PageID #: 2569.
[29] *Id.* at PageID #: 2859.
[30] *Id.* at PageID #: 2926.
[31] *Id.* at PageID #: 2930, 3006.
[32] *Id.* at PageID #: 3174.

Case No. 1:22-cv-02154
GWIN, J.

In August 2022, group members indicate they intend to renew efforts towards litigation and that those interested should opt into the planned class action lawsuit by emailing Troyer.[33] At the same time, others mention instigating separate lawsuits pro se.[34]

Ultimately, there are forty-six original named Plaintiffs to the complaint, most of whom are named in the Telegram group.[35] While Plaintiff Savel initially sought to establish the aforementioned class, he has not shown that every other member in the Telegram group—including the anonymous ones—falls into the prospective class that would have been represented by attorney Troyer. Moreover, there is at least one Telegram group member who opted out of the class and proceeded pro se.

Because any messages were published to these unrepresented Telegram group members, the attorney-client privilege is waived for the entire Telegram group message.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff Savel's motion to quash Defendant MetroHealth's subpoenas to Isaac Allison, Darlene Rutledge, and Kerry Stouges. Plaintiff Savel must produce any relevant video, picture, or audio messages in addition to the text messages provided to the Court.

IT IS SO ORDERED.

Dated: July 26, 2024      *s/    James S. Gwin*
                          JAMES S. GWIN
                          UNITED STATES DISTRICT JUDGE

---

[33] *Id.* at PageID #: 3250, 3255.
[34] *Id.* at PageID #: 3174.
[35] *See* Doc. 2, PageID #: 67.