IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **FRANK SAVEL,** | : | **CASE NO. 1:22-cv-02154** |
|  | : |  |
| **Plaintiff,** | : | **JUDGE JAMES GWIN** |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **THE METROHEALTH SYSTEM** | : |  |
|  | : |  |
| **Defendant.** | : |  |

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

## I.     INTRODUCTION

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition," ECF 60) falls woefully short of identifying any issue of material fact, let alone a genuine issue of material fact, which would save Plaintiff's remaining claims from summary judgment. Defendant is entitled to summary judgment based on the following <u>undisputed material facts</u>:

- MetroHealth did not issue a blanket denial of "all religious exemption requests" to its COVID-19 vaccine policy; it completed individualized assessments of all non-medical/religious exemption requests to determine: (1) whether the individual employee had articulated a sincerely held non-medical/religious belief, and (2) whether it would constitute an undue burden to accommodate the individual employee's exemption request. MetroHealth established a committee to review all non-medical/religious exemption requests, which was comprised of qualified MetroHealth professionals who carefully reviewed each exemption request individually. MetroHealth also completed individualized assessments for medical exemption requests. (2nd Supp. Calabrese Decl., ¶3, ECF 22-1, PageID #987-988; 3rd Supp. Calabrese Decl., ¶¶6-7, ECF 55-2, PageID #3696.)

- In January and February 2022, although COVID-19 positive cases were declining in Cuyahoga County, they still remained high, and positivity rates remained high at MetroHealth. As a result, MetroHealth concluded that allowing unvaccinated employees who provided direct patient care, were in other in-person patient-facing roles, or whose job responsibilities otherwise required them to work on-site, posed

serious and unnecessary safety risks to co-workers, patients, and others at MetroHealth's hospitals and healthcare facilities. (2ⁿᵈ Supp. Calabrese Decl., ¶¶4-5, ECF 22-1, PageID #987-988; 3ʳᵈ Supp. Calabrese Decl., ¶¶8-9, ECF 55-2, PageID #3696-3697.)

- In February 2022, MetroHealth issued individualized decision letters to each employee who submitted a non-medical/religious exemption request informing them whether their request was approved (if they provided information supporting a sincerely held religious belief and their job duties could be performed 100% remotely) or denied (if they failed to provide information supporting a sincerely held religious belief and/or their job duties could not be performed 100% remotely). (2ⁿᵈ Supp. Calabrese Decl., ¶6, ECF 22-1, PageID #988-989.)

- MetroHealth received 316 non-medical/religious exemption requests, 19 of which it initially approved, and received 99 medical exemption requests, 12 of which it initially approved. (3ʳᵈ Supp. Calabrese Decl., ¶10, ECF 55-2, PageID #3697.)

- MetroHealth informed the employees whose exemption requests were initially denied that they had to get fully vaccinated and submit proof of vaccination within 45 days of the date the letter was issued, and also welcomed these employees to explore job vacancies at MetroHealth that were fully remote, providing the website to review the current vacancies and the Talent Acquisition email address for any questions about the vacancies. (Savel Dep., pp. 99-100, ECF 54-1, PageID #3612; Original Calabrese Decl., ¶7, ECF 12-2, PageID #302, and Ex. 1-E thereto, PageID #311-430; 3ʳᵈ Supp. Calabrese Decl., ¶11, ECF 55-2, PageID #3697.)

- Savel was a registered nurse at MetroHealth's main campus in the Medical Intensive Care Unit and, on September 2, 2021, submitted a non-medical/religious exemption request from MetroHealth's COVID-19 vaccination requirement. (Savel Dep., pp. 42-43, 77, ECF 54-1, PageID #3598, 3606.)

- In December 2021, MetroHealth requested additional information from Savel about his religious exemption request, to which he responded on December 8, 2021 and January 21, 2022. (Savel Dep., pp. 92-93, ECF 54-1, PageID #3610; 12/6/2021 Request for Information, ECF 55-10, PageID #3750-3753; 12/8/2021 and 1/21/2022 Responses to Request for Additional Information, ECF 55-11, PageID #3754-3760.)

- Given that his position required direct patient contact and could not be performed 100% remotely, on February 7, 2022, MetroHealth informed Savel of its denial of his exemption request. (Savel Dep., pp. 99-100, ECF 54-1, PageID #3612; 2/7/2022 Vaccination Exemption Request Response, ECF 55-12, PageID #3761-3762.)

- Although MetroHealth welcomed Savel to explore job vacancies that could be performed fully remote, Savel did not consult with anyone at MetroHealth concerning fully remote options. Rather, Savel chose to immediately look outside of MetroHealth for other employment positions, applying for and accepting an invitation for an

interview with University Hospitals as of February 8, 2022. (Savel Dep., pp. 126-127, 164, ECF 54-1, PageID #3619, 3628; Savel Dep., pp. 224-225, ECF 54-2, PageID #3648-3649.)

- By February 16, 2022, Savel was offered and accepted a comparable position at University Hospitals as a registered nurse in its Medical Intensive Care Unit, *i.e.*, the same position he held at MetroHealth, just three miles from his home (24 miles closer to his home than MetroHealth), with a starting base pay rate of $40.00 per hour, a shift differential on average of $6.50/hour in addition to his base pay rate, plus a $6,000 signing bonus. (Savel Dep., pp. 111-113, 139, ECF 54-1, PageID #3615, 3622; Savel Dep., pp. 218-220, 237-239, ECF 54-2, PageID #3647, 3652; 2/16/2022 Offer Letter and Email Acceptance, ECF 55-14, PageID #3764-3765.)

- On February 16, 2022, when Savel accepted the position at University Hospitals, he already knew that his counsel planned to seek injunctive relief to prevent MetroHealth from taking any adverse action against employees whose religious exemption requests were denied, including himself, if they did not become fully vaccinated within 45 days of the date of the decision letter informing them of the denial. (Savel Dep., pp. 228-230, 259-261, ECF 54-1, PageID #3649-3650, 3657-3658.)

- Savel informed his manager at MetroHealth of his decision to leave and continued to work at MetroHealth for two weeks through March 4, 2022. Savel chose to take a few weeks off and began employment with University Hospitals on March 28, 2022. (Savel Dep., pp. 106, 114-117, ECF 54-1, PageID #3614, 3616; Savel Dep., pp. 219-220, ECF 54-2, PageID #3647.)

- The majority of other employees whose non-medical/religious exemption requests were initially denied, elected to continue employment at MetroHealth; specifically, of the 297 employees whose non-medical/religious exemption requests were initially denied, just eleven (including Savel and now dismissed Crockett), or approximately 3.7%, resigned between February 7, 2022 and March 15, 2022, claiming that their resignations were vaccine-related, and only two of them (Savel and now dismissed Crockett) filed charges of discrimination. (3rd Supp. Calabrese Decl., ¶15, ECF 55-2, PageID #3699.)

- On March 9, 2022, Savel made the decision to retire from OPERS at the age of 55 with a reduced monthly benefit. (Savel Dep., pp. 124, 156, 163, ECF 54-1, PageID #3618, 3626, 3628.)

- Savel was not obligated to retire from OPERS when he resigned from MetroHealth. He could have remained a member with his account in-tact should he return to MetroHealth or another OPERS-covered employer in the future, at which time, he could pick up where he left off from a number of service years perspective and worked an additional 20 months and then retired with an unreduced benefit. (Savel Dep., p. 262, ECF 54-2, PageID #3658; OPERS Affidavit, Ex. A.)

3

- Savel was eligible to withdraw his OPERS retirement application within 30 days of receipt of the first monthly payment received, *i.e.*, within 30 days of April 1, 2022, if he desired to change his effective retirement date or if he desired to return to an OPERS covered employer to accrue additional service credit and retire later. (Savel Dep., pp. 132, 167-168, ECF 54-1, PageID #3620, 3629; 3/10/2022 OPERS Letter, ECF 55-15, PageID #3766-3767.)

- By mid-March 2022, MetroHealth felt that COVID-19 cases in Cuyahoga County and within MetroHealth had declined to a level such that it could now reasonably accommodate unvaccinated employees whose essential functions could not be performed 100% remotely so long as they followed all other applicable COVID-19 safety precautions, and announced this to its employee population on March 15, 2022. (Original Calabrese Decl., ¶9, ECF 12-2, PageID #302; 2nd Supp. Calabrese Decl., ¶7, ECF 22-1, PageID #989; 3rd Supp. Calabrese Decl., ¶¶12-14, ECF 55-2, PageID #3697-3699; 3/15/2022 COVID Medical And Non-Medical Exemption Announcement, ECF 55-8, PageID #3742-3743.)

- In mid-March 2022, Savel learned that MetroHealth was now going to allow exemption requests for those whose requests were initially denied on grounds that their positions could not be performed 100% remotely. (Savel Dep., pp. 127-130, ECF 54-1, PageID #3619-3620.)

- Despite learning that MetroHealth was now going to allow exemption requests for those whose requests were initially denied on grounds that their positions could not be performed 100% remotely prior to beginning employment at University Hospitals and prior to the deadline to withdraw his OPERS retirement application, Savel did not contact anyone at MetroHealth to inquire about returning to his position even though his manager had informed him that "she would be happy to see [him] back," and, further, did not seek to withdraw his OPERS retirement application. (Savel Dep., pp. 127-130, 132, 167-168, ECF 54-1, PageID #3619-3620, 3629; Savel Dep., pp. 233-234, ECF 54-2, PageID #3651.)

In his Opposition, Plaintiff fails to identify any admissible evidence to dispute any of these material facts. Rather, Plaintiff relies on his own subjective belief, ignores the applicable law, and attempts to manufacture an issue of material fact by ignoring or misrepresenting the facts and applicable law.[1] As fully outlined in Defendant's Motion and herein, construing all admissible

---

[1] Plaintiff also continues to seek additional time to address Defendant's Motion for Summary Judgment, requesting that he be allowed to supplement his Opposition after deposing Ms. Calabrese on September 6, 2024. (Opposition, ECF 60, pp. 1-2, PageID #3840-3841.) However, as set forth in Defendant's Opposition to Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment (ECF 59), the timing of Ms. Calabrese's deposition is a result of Plaintiff's counsel's dilatory discovery conduct. Defendant filed its Motion for Summary Judgment on July 29, 2024 in compliance with the case

evidence in Plaintiff's favor, Plaintiff fails to state religious discrimination claims under Title VII and/or Ohio Rev. Code § 4112 for failure to accommodate or disparate treatment.

## II.     LAW & ARGUMENT

For a claim to survive summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A party opposing summary judgment must offer admissible evidence that creates a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff has not done so. As a result, his claims must be dismissed.

### A.     **Plaintiff Fails to Identify Any Genuine Issues of Material Fact Precluding Summary Judgment on his Failure to Accommodate Religious Discrimination Claim.**

In his Opposition, with regard to his failure to accommodate religious discrimination claim, Savel does not contend that MetroHealth disciplined or discharged him;[2] rather, he contends that he was constructively discharged because the Sixth Circuit found that he met the plausibility standard to survive a Motion to Dismiss in this regard (Opposition, ECF 60, pp. 3-4, PageID

---

management order in this matter, and despite being fully aware of MetroHealth's position in this case since Defendant's March 23, 2023 Answer (ECF 10) and April 26, 2023 Initial Disclosures identifying Ms. Calabrese as a potential witness (ECF 59-1), Plaintiff did not request Ms. Calabrese's deposition until August 15, 2024, *i.e.*, three business days after his Opposition was originally due and only two business days prior to his extended deadline. (ECF 60-2.) Plaintiff also requested to depose a corporate representative of MetroHealth, but despite being asked to provide the information required under Fed.R.Civ.P. 30(b)(6) to enable Defendant to identify a deponent or deponents, has failed to do so. (*Id.*) The Court should not delay in ruling upon Defendant's amply supported Motion for Summary Judgment given the October 7, 2024 trial setting.

[2] Because Plaintiff does not address this point, it is conceded, and Plaintiff may not attempt to refute it later. *Degolia v. Kenton Cty.*, 381 F.Supp.3d 740, 759-760 (E.D. Ky. May 7, 2019) ("As a practical matter, 'it is well understood…that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'"); *Sloan v. Fresenius Med. Care N.A.*, No. 1:14CV02769, 2016 U.S. Dist. LEXIS 128028, *11-12 (N.D. Ohio Sept. 20, 2016) ("In her Opposition, Plaintiff also does not refute or address this argument. Because Plaintiff has failed to meet her burden in opposing summary judgment on these claims, Plaintiff has abandoned these claims and waived any argument concerning dismissal of them.")

#3842-3843), <u>a different standard than that applicable to the Motion for Summary Judgment</u> <u>presently before the Court</u>.

Indeed, the Sixth Circuit explicitly stated: "It is possible that [Savel] may lack standing at a later phase of this litigation based on additional evidence about the certainty of termination." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 942 (6th Cir. 2024). The Sixth Circuit also stated: "Time—and, crucially, discovery—will tell whether [Savel will] satisfy the *prima facie* case requirements. The district court may ultimately be right that [he] cannot make that showing. But at the pleading stage, it is too soon to consider that question." *Id.* at 944. Contrary to Plaintiff's assertion, the Sixth Circuit did not find that "the handwriting was on the wall and the axe was about to fall." (Opposition, ECF 60, p. 5, PageID #3844.) The Sixth Circuit left that to be decided by this Court following discovery. However, discovery has not uncovered any evidence supporting Plaintiff's constructive discharge theory. To the contrary, the undisputed evidence fails to support Plaintiff's constructive discharge theory.

Plaintiff relies entirely on an excerpt of language from the February 7, 2022 initial determination denying his exemption request and giving him 45 days to get vaccinated to support his contention that termination was imminent (Opposition, ECF 60, pp. 4-5, PageID #3843-3844), but he ignores the rest of the language in that letter, including, but not limited to, the section welcoming him to explore job vacancies at MetroHealth that were fully remote, providing the website to review the current vacancies and the Talent Acquisition email address for any questions about the vacancies. (February 7, 2022 Letter, ECF 55-12, PageID #3762.)

Moreover, he fails to even address the elements of a *prima facie* constructive discharge claim; specifically, that he must establish that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) did so with the intention of

6

forcing them to quit; or that he resigned when it was absolutely clear that termination was imminent. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727-728 (6th Cir. 2014) (citation omitted); *Edwards v. City of Cincinnati*, No. 1:22-cv-503, 2023 U.S. Dist. LEXIS 4748, at *10 (S.D. Ohio Jan. 10, 2023); *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 636 (6th Cir. 2003). He offers no admissible evidence which would support a finding that MetroHealth deliberately created intolerable working conditions in any way related to his religious beliefs or religious exemption request, as perceived by a reasonable person, with the intention of forcing him to quit, or that he resigned when it was absolutely clear that termination was imminent. In fact, he entirely ignores the case law and extensive undisputed evidence to the contrary in Defendant's Motion. (Defendant's Motion for Summary Judgment, § III(B)(1), ECF 55-1, pp. 9-13, PageID #3681-3685.)

Indeed, he makes no attempt to distinguish the facts herein from *Goldmeier v. Allstate Ins. Co.*, 377 F.3d 629, 636 (6th Cir. 2003) where the Sixth Circuit found that the plaintiffs could <u>not</u> establish a constructive discharge after they obtained alternative employment and resigned fifty-three days before the first actual conflict between their religious and employment requirements would have occurred. Here, Savel was informed of the denial of his exemption request on February 7th. 45 days from then would have been March 24th, but he had already accepted alternative employment by February 16th, *i.e.*, thirty-six days before the first actual conflict between his religious and employment requirement would have occurred. Similarly, in *Goldmeier*, the defendant employer "intransigently refused" to adjust its policy prior to the Goldmeiers resignation. 377 F.3d at 636.

Moreover, Savel ignores that MetroHealth welcomed the employees whose non-medical/religious exemption requests were initially denied to explore job vacancies at MetroHealth

7

that were fully remote, providing the website to review the current vacancies and the Talent Acquisition email address for any questions about the vacancies. (Savel Dep., pp. 99-100, ECF 54-1, PageID #3612; Original Calabrese Decl., ¶7, ECF 12-2, PageID #302, and Ex. 1-E thereto, PageID #311-430; 3rd Supp. Calabrese Decl., ¶11, ECF 55-2, PageID #3697.) He likewise ignores that the majority of other employees whose non-medical/religious exemption requests were initially denied elected to continue employment at MetroHealth, establishing that the working conditions were not intolerable as perceived by a reasonable person. (3rd Supp. Calabrese Decl., ¶15, ECF 55-2, PageID #3699.) Further, he ignores that he, himself, knew that it was not absolutely clear that termination was imminent as his counsel planned to seek injunctive relief to prevent MetroHealth from taking any future adverse action. (Savel Dep., pp. 228-230, 259-261, ECF 54-1, PageID #3649-3650, 3657-3658.)[3] While Savel suggests that MetroHealth changed course and allowed previously denied exemption requests in mid-March 2022 because it must have known that they had planned to seek injunctive relief, there is no admissible evidence in this regard. Further, it is neither true nor relevant.

---

[3] Indeed, Savel's own counsel asked if he could defer his start at University Hospitals while pursuing an injunction, stating:

> Can you defer your retirement plan and your UH position until the 24th (or a few days prior to that)? That would allow us a couple weeks to see if we can prevail with the plan for injunction. If we get the injunction, then I am hopeful Metro will negotiate; but, if not, we would then proceed with a lawsuit with the likelihood the injunction would remain in place during the pendency of the lawsuit. In either scenario, you would likely have the additional time you need to make it to full retirement….

(Telegram Excerpt, Ex. B.) While ordinarily this type of communication would be privileged, Savel waived the privilege by voluntarily disclosing it to other participants on the Telegram Messenger application, including individuals who were never parties to this action and never represented by Plaintiff's counsel. *See Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (citing *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999)); *Pontikos v. Am. Med. Tech., Inc.*, No. 1:20-cv-02163, 2021 U.S. Dist. LEXIS 30381, *3-4 (N.D. Ohio Feb. 18, 2021) (collecting cases).

For the reasons set forth in Defendant's Motion (§ III(B)(1), ECF 55-1, pp. 9-13, PageID #3681-3685) and further addressed above, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate religious discrimination claim.

### B.  Plaintiff's Subjective Beliefs and Disagreement with MetroHealth's Assessment of Undue Hardship are Insufficient to Defeat Summary Judgment.

Additionally, as to undue burden, which the Court need not even consider given Plaintiff's failure to offer any evidence creating a genuine issue of material fact on the *prima facie* elements of his constructive discharge claim, Savel simply questions how it could constitute an undue burden to grant his exemption request when COVID-19 cases were declining and he had been allowed to work up until that point.[4]  (Opposition, ECF 60, pp. 5-7, PageID #3844-3846.)

The undisputed evidence establishes that, in December of 2021, MetroHealth faced a surge of COVID-19 cases. Plaintiff himself testified that "[t]he hospitals were very full" and, by the end of that month, he had also contracted COVID-19. (Savel Dep., p. 94, ECF 54-1, PageID #3611.) MetroHealth continued to monitor COVID-19 cases in January and February 2022, and felt that, although they were declining in Cuyahoga County, they still remained high, and positivity rates remained high at MetroHealth. (2nd Supp. Calabrese Decl., ¶4, ECF 22-1, PageID #988; 3rd Supp. Calabrese Decl., ¶8, ECF 55-2, PageID #3696.) As a result, MetroHealth concluded that allowing unvaccinated employees who provided direct patient care, were in other in-person patient-facing roles, or whose job responsibilities otherwise required them to work on-site posed serious, and

---

[4] In addition, Plaintiff contends that the fact that MetroHealth received a shipment of vaccines as early as December 15, 2020 illustrates that it did not incur undue hardship because unvaccinated employees were permitted to work without consequence for nearly a year. (Opposition, p. 7, PageID #3846.) But this ignores the ever-changing medical and legal landscape of the pandemic. In November of 2021, the federal Centers for Medicare & Medicaid Services issued an interim final rule that mandated covered hospitals who participate in the Medicare and Medicaid program, which MetroHealth does, to ensure their staff were vaccinated, unless exempt for medical or religious reasons. (*See* ECF 12-1, PageID #278, citing 86 Federal Register 61555.) The fact that MetroHealth received a shipment of vaccines in December of 2020 is irrelevant.

unnecessary safety risks to co-workers, patients, and others at MetroHealth's hospitals and healthcare facilities. (2nd Supp. Calabrese Decl., ¶¶4-5, ECF 22-1, PageID #988; 3rd Supp. Calabrese Decl., ¶¶8-9, ECF 55-2, PageID #3696-3697.)

MetroHealth has never denied that COVID-19 cases were declining after this surge in December of 2021. But nothing precludes MetroHealth from exercising its judgment to conclude that the rates had not declined enough to where it felt that it could safely accommodate allowing unvaccinated employees to continue to provide direct patient care, serve in other in-person patient facing roles, or work on-site. *See, e.g., Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-5734, 2022 U.S. Dist. LEXIS 29355, *22 (E.D. Penn. Feb. 17, 2022) (granting summary judgment to the hospital because, even though it had already approved 24 religious exemption requests for the influenza vaccine, granting plaintiff's request "'could have put the health of vulnerable patients at risk,' with the potential for increased hospitalization and death as a result" and constituted undue hardship).

Plaintiff's subjective belief that MetroHealth did not face an undue burden because COVID-19 cases were declining and he had been allowed to work up to this point is insufficient to refute MetroHealth's assessment of the continuing safety risks. *See Tibbs v. Calvary United Methodist Church*, 505 F.App'x 508, 514 (6th Cir. 2012) (nothing that "arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*") (citation omitted).

**C.**     <u>**Plaintiff Fails to Identify Any Genuine Issues of Material Fact Precluding Summary Judgment on his Disparate Treatment Religious Discrimination Claim.**</u>

To establish a *prima facie* case of disparate treatment in the religious discrimination context, Plaintiff must establish, among other things, that he suffered an adverse employment action and that he was treated less favorably than a similarly situated person because of his religion. *See Makar v. Cleveland Clinic Found.*, No. 1:19Cv1185, 2021 U.S. Dist. LEXIS 45784, *9-10 (N.D. Ohio Mar. 11, 2021). He fails to do so.

Plaintiff contends that a February 14, 2022 COVID-19 Brief issued by MetroHealth, allowing vaccinated employees to forego wearing a mask in common nonclinical areas and during in-person meetings while requiring unvaccinated employees to continue to wear a mask and distance in this setting, constitutes disparate treatment. (Opposition, ECF 60, pp. 6-8, PageID #3845-3847.) However, the publication makes no mention of religion, but rather is focused on vaccinated vs. unvaccinated status, which is not a protected classification. (February 14, 2022 COVID-19 Brief, ECF 12-2, PageID #431-432.) There is simply no evidence tying the application or non-application COVID-19 safety protocols to Plaintiff's religion; the only differences in treatment with respect to the application or non-application COVID-19 safety protocols were related to vaccination status, which is not a protected classification. *Robertson v. McKesson Corp.*, No. 2:23-cv-2334, 2023 U.S. Dist. LEXIS 141159, *18 (S.D. Ohio Aug. 11, 2023) (citation omitted), Report and Recommendation adopted and *aff'd* in 2023 U.S. Dist. LEXIS 188996 (S.D. Ohio Oct. 20, 2023).

For the reasons set forth in Defendant's Motion (§ III(C), ECF 55-1, pp. 17-20, PageID #3689-3692) and further addressed above, Defendant is entitled to summary judgment on Plaintiff's disparate treatment religious discrimination claim.

### D.     There is No Evidence of Pretext

Finally, Plaintiff contends that there is pretext precluding summary judgment on grounds that MetroHealth did not engage in an interactive process regarding his religious exemption request and took months to issue the determination letter denying his exemption request. (Opposition, ECF 60, pp. 8-9, PageID #3847-2848.) His argument is not supported by the undisputed evidence.

Rather, the undisputed evidence establishes that:

- On September 2, 2021, Savel requested a non-medical/religious exemption from MetroHealth's COVID-19 vaccination requirement. (Savel Dep., pp. 42-43, 77, ECF 54-1, PageID #3598, 3606.)

- In December 2021, MetroHealth requested additional information from Savel about his religious exemption request, to which he responded on December 8, 2021 and January 21, 2022. (Savel Dep., pp. 92-93, ECF 54-1, PageID #3610; 12/6/2021 Request for Information, ECF 55-10; 12/8/2021 and 1/21/2022 Responses to Request for Additional Information, ECF 55-11.)

Even though Savel's responses were, in his own words, "a little catty," Savel felt like he addressed MetroHealth's questions. (Savel Dep., p. 94, ECF 54-1, PageID #3611.) There was a back and forth between Savel and MetroHealth, which is the type of interactive process contemplated under Title VII.

In support of his "pretext" argument, Plaintiff cites a single case – *Vargas v. Sears, Roebuck & Co.*, No. 97-CV-75020-DT, 1998 U.S. Dist. LEXIS 21148 (E.D. Mich. Dec. 28, 1998). However, in *Vargas*, the court granted the defendant's motion for summary judgment on grounds that the plaintiff failed to establish a *prima facie* case of a failure to accommodate his religious beliefs.

To establish pretext, Plaintiff would need to show: (1) that MetroHealth's reasons had no basis in fact; (2) that the proffered reasons did not actually motive MetroHealth; or (3) that the

proffered reasons were not sufficient for MetroHealth to act as it did. *Ploscowe v. Kadant*, 121 F.App'x 67, 74-75 (6th Cir. 2005). Savel simply has failed to do so.

### III.  CONCLUSION

Defendant is entitled to judgment in its favor as a matter of law. Plaintiff fails to cite one iota of admissible evidence in his Opposition that creates a genuine issue of material fact which would allow his religious discrimination claims to proceed to a jury. For the foregoing reasons and the reasons set forth in Defendant's Motion for Summary Judgment and Memorandum in Support, Defendant respectfully requests that this Court enter summary judgment in its favor as to the two remaining claims asserted against it in this action under Title VII and Ohio Rev. Code § 4112: (1) failure to accommodate religious discrimination and (2) disparate treatment religious discrimination.

Respectfully submitted,

ZASHIN & RICH CO., L.P.A.

*/s/ Rebecca G. Singer-Miller*
Stephen S. Zashin (0064557)
ssz@zrlaw.com
Ami J. Patel (0078201)
ajp@zrlaw.com
Natalie M. Stevens (0079963)
nms@zrlaw.com
Rebecca G. Singer-Miller (0103774)
rsm@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH 44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

*Attorneys for Defendant The MetroHealth System*

## COMPLIANCE WITH LOCAL RULE 7.1

The undersigned certifies that the Court has assigned this case to the standard track and the foregoing *Defendant's Reply in Support of Its Motion for Summary Judgment* adheres to the 20-page limitation of Local Rule 7.1(f).

/s/ Rebecca G. Singer-Miller
*One of the Attorneys for Defendant*
*The MetroHealth System*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2024, a true and correct copy of the foregoing *Defendant's Reply in Support of Its Motion for Summary Judgment* was filed via the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties, including the following counsel of record, may access this filing through the Court's electronic filing system:

Jon A. Troyer
jtroyer@aghattorneys.com
Richard W. Arnold
rarnold@aghattorneys.com
ARNOLD GRUBER LTD.
4580 Stephen Cir. NW, Suite 100
Canton, Ohio 44718

*Attorneys for Plaintiff Frank Savel*

/s/ Rebecca G. Singer-Miller
*One of the Attorneys for Defendant*
*The MetroHealth System*

14